Exhibit 1

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**05/11/2015** at 08:00:00 AM

Clerk of the Superior Court
By Elizabeth Cramer, Deputy Clerk

1  Rowel S. Manasan, Esq. (SBN 248724)
   MANASAN LAW GROUP
2  PROFESSIONAL CORPORATION
   21021 Trigger Lane
3  Diamond Bar, CA 91765
   (909) 524-9995
4

5

6  Attorney for Plaintiff Donald Okada

7

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **IN AND FOR THE COUNTY OF ORANGE**

   **CENTRAL JUSTICE CENTER**
10

11                                          30-2015-00786774-CU-OR-CJC
                              Case No.   Judge Randall J. Sherman
12

   DONALD OKADA, an individual    **COMPLAINT FOR:**
13

14                                   1.  FALSE PROMISE
            Plaintiff,               2.  NEGLIGENT
15                                       MISREPRESENTATION
        vs.                          3.  VIOLATION OF CIVIL CODE
16  BANK OF AMERICA, N.A.;  SELECT         §2923.6
    PORTFOLIO SERVICING; NATIONAL    4.  VIOLATION OF CIVIL CODE
17  DEFAULT SERVICING CORPORATION        §2924.10
    AND; DOES 1-50;                  5.  VIOLATION OF CIVIL CODE
18                                       §2924.18
            Defendants.              6.  VIOLATION OF BUSINESS AND
19                                       PROFESSIONS CODE §17200
20                                   (Unlimited Jurisdiction: Amount in
                                     Controversy Exceeds $25,000.00)
21

22

23

24

25      COMES NOW the PLAINTIFF,  Donald Okada, ("PLAINTIFF"), complaining of

26  the DEFENDANTS, and each of them, as follows:

27  ///

28  ///

---

1

**COMPLAINT**

# INTRODUCTION

1.     PLAINTIFF is a resident of the County of Orange, State of California and the lawful owner of a parcel of Real Property commonly known as 316-316 ½ Iris Avenue, Newport Beach, CA 92625. ("SUBJECT PROPERTY").

2.     PLAINTIFF brings this private right of action pursuant to the California Homeowner's Bill of Rights under California Civil Code §2924.12 and §2924.19 to enjoin DEFENDANTS from proceeding with a trustee sale.

3.     PLAINTIFF contends that the following DEFENDANTS violated PLAINTIFF'S rights under the "SUBJECT PROPERTY": BANK OF AMERICA, N.A. ("BOFA"), the first mortgage service, SELECT PORTFOLIO SERVICING ("SPS"), the current mortgage servicer and NATIONAL DEFAULT SERVICING CORPORATION ("NDS"), the trustee and agent of SPS.

4.     This action is based on BOFA and SPS's deliberate attempt to mislead Plaintiff into believing that he would be eligible to apply for the National Mortgage Settlement Program ("NMSP") in order to prevent Plaintiff from pursuing his case further. BOFA and subsequently SPS had no intention of enrolling Plaintiff in the NMSP. Plaintiff relied on these representation in good faith with the intention to avail of the opportunity to obtain a principal reduction of his loan.

5.     Instead, Defendants blatantly delayed the process of allowing Plaintiff to modify his loan at the time Plaintiff submitted his application for the NMSP.   As a result of this delay, Plaintiff lost an opportunity to reduce his mortgage under the NMSP because the program is now expired.  To add insult to injury, Defendants now seek to foreclose on the home and claim to have provided Plaintiff with an opportunity for an "in-house modification." The purported in-house modification does not offer Plaintiff an opportunity to lower the principal in his home.  Defendants' underlying actions form the gravamen of Plaintff's False Promise and Negligent Misrepresentation claims. Defendants also violated Plaintiff's rights under California's Homewoner's Bill of Rights and Plaintiff's claim forms the basis for a violation of Califronia Professions and Business code §17200 et seq.

6.     Plaintiff seeks to enjoin Defendants from further pursuing a trustee sale of Plaintiff's home and damages as a result of Plaintiff's lost opportunity to avail of the NMSP. Furthermore, Plaintiff seeks an opportunity to be reviewed for a modification under the same

criteria as promised by BOFA when Plaintiff was first offered the opportunity to obtain a modification under the NMSP.

### GENERAL ALLEGATIONS

7.      On or about November 11, 2005 PLAINTIFF purchased the SUBJECT PROPERTY for $2,200,000.00

8.      On or about November 11, 2005 purchased the SUBJECT PROPERTY for $2,200,000.00.

9.      On or about November 15, 2006, Plaintiff refinanced and executed a Mortgage Note with COUNTRYWIDE BANK in the amount of $1,610,000.00.  Plaintiff signed an adjustable rate note.  The significance of the adjustable rate note feature was not made clear to Plaintiff.  The loan is a Negative Adjustatble Rate Mortgage where the payments were reconfigured every twelve months.

10.      COUNTRYWIDE BANK was eventually bought out by Defendant BANK OF AMERICA.

11.      Defendant BANK OF AMERICA would not consider a loan modification for Plaintiff; Plaintiff did not get past Defendant BANK OF AMERICA's preliminary screening process because Plaintiff has too many properties under water to qualify.

12.      In October 2011, Plaintiff applied for a Short Sale.

13.      The Trustee Sale was scheduled for December 1, 2011.

14.      Defendant BANK OF AMERICA did not timely respond to Plaintiff's Short Sale application.  In fact, Defendant BANK OF AMERICA denied Plaintiff's application for the Short Sale some time after the Trustee Sale date.

15.      However, Plaintiff was aware of Defendant BANK OF AMERICA's tactic. Defendant BANK OF AMERICA had done the same thing to Plaintiff with regard to another property, *to wit*: Defendant BANK OF AMERICA filed to respond timely to Plaintiff's short sale application, and that property was sold at the trustee sale.  Accordingly, Plaintiff was forewarned and was able to stop the Trustee Sale for the SUBJECT PROPERTY by other measures.

16.      Subsequently, Plaintiff entered into another Short Sale but an attached Bankruptcy extended the sale until October 5, 2012.

17.      The Bankruptcy was removed in August 2012, but was reopened in September 2012 and this stopped the Short Sale, where the SUBJECT PROPERTY remains today.

3

**COMPLAINT**

18.     The HELOC is serviced by Green Tree Servicing LLC ("Green Tree").  Green Tree approved a Short Sale amount, but they referenced and provided a copy of a Mortgage Note that is not valid as to the SUBJECT PROPERTY; the Mortgage Note provided by Green Tree is for the Carnation property ("Carnation Mortgage Note").  In fact, another party has claimed ownership of the Carnation Mortgage Note.

19.     In September 2012, Plaintiff contacted Green Tree via certified letter and telephone.  In response, Green Tree called Plaintiff and said that they would provide the correct documentation to show that they were the proper party of the HELOC for the SUBJECT PROPERTY.  However, Green Tree never provided Plaintiff with such documentation.

20.     Subsequently, Plaintiff sent a qualified written request and ran the securization audit.

21.     The result of the securitization audit provided the basis for a complaint against defendant BOFA, Countrywide Home Loans, Inc, The Bank of New York, Recontrsust Company N.A., and Select Portfolio Servicing.  The Complaint was filed on January 11, 2013.

22.     On or about March 2013, Plaintiff began discussions with Defendant's counsel, Mr. Andres Orphanopolous of the law firm Reed Smith LLP to dismiss the case.  On or about March 7, 2013, Mr. Orphanopolous indicated to Plaintiff that his client BOFA determined that Plaintiff qualified under the NMSP.  (See Exhibit A).   While Plaintiff wanted to avail of the opportunity to apply for the NMSP, Plaintiff expressed concerns that BOFA through its trustee Recontrust, would file a notice of trustee sale and sell the home.  On or about March 19, 2013, Mr. Orphanoplous assured Plaintiff that BOFA would not foreclose provided that Plaintiff was under consideration for the NMSP.

23.     Plaintiff relied on these representations and dismissed his lawsuit on or about March 25, 2013.

24.     On or about March 28, 2013, Plaintiff spoke with a representative of BOFA's home retention group who indicated to Plaintiff orally that he qualified for the NSMP program.  The BOFA representative indicated that the next step was to send the documentation.

25.     On or abut March 23, 2013, Plaintiff sent all the required documents for the NMSP to BOFA's Home Retention Group.

26.     On or about March 28, 2013, Plaintiff also sent another copy of the NMSP application documents via fax to BOFA's Home Retention Group.

4

**COMPLAINT**

27.     On or about June 6, 2013, Plaintiff received a letter dated May 24, 2013 from BOFA indicating that Plaintiff withdrew his NMSP application on May 21, 2013.

28.     On or about June 6, 2013, Plaintiff spoke with a BOFA representative and setup a call to discuss the May 24, 2013 letter on June 7, 2013 at 10AM Pacific Standard Time.

29.     Plaintiff did not receive a call from a BOFA representative.

30.     On or about June 7, 2013, Plaintiff called BOFA to leave a message.

31.     On or about June 10, 2013, Plaintiff indicated to BOFA through a certified letter that he **did not represent to BOFA a request to withdraw the NMSP application at any point in time and requested for immediate reinstatment of the NMSP application.**

32.     On or about June 17, 2013 Plaintiff called BOFA and spoke to a BOFA representative. Plaintiff explained to the representative that he never indicated to BOFA that he was withdrawing his application and he provided every document required under the NMSP. The representative explained to him that she did not know why the NMSP application was removed from consideration.  She informed Plaintiff that she would do some research into the matter and that Plaintiff would be notified within 10 business days the results of her research.

33.     On or about June 25, 2013, Plaintiff resubmitted the NMSP application with additional documents to update the NMSP application as required by the NMSP application.

34.     On or about June 27, 2013, Plaintiff received a phone call from BOFA representative Ms. Winona Petersen.  Ms. Petersen indicated to Plaintiff that she had spoken to a "Christina Cornett" and that Ms. Petersen requested additional documents from Plaintiff to complete the NMSP application.  On the same day, Plaintiff sent the requested documents via Federal Express and Fax

35.     On or about July 9, 2013, Plaintiff received a call from from Ms. Carol Bedford of BOFA on behalf of Ms. Shanko McRae who was the new customer service representative on Plaintiff's request for the NMSP modification.  Ms. Bedford asked for additional documents.

36.     On or about July 9, 2013 and July 11, 2013 Plaintiff sent the requested additional documents through mail and fax.

37.     On or about July 17, 2013, Plaintiff sent additional documents to explain an issure regarding paystubs which the NMSP application requires.

38.     On or about July 22, 2013, Plaintiff spoke with BOFA representative Ms. Nikki McRae in order to verify that BOFA had received the additional documents.  Ms. McRae

indicated that the documents were received by BOFA and that no further documents were required at the time  Ms. McRae indicated that she would follow up with Plaintiff, July 31, 2013.

39.     On or about July 30, 2013, BOFA representative Ms. McRae contacted Plaintiff requesting Plaintiff to provide a utility bill. **Ms. McRae indicated that this would be the *last document required for underwriting* for the NMSP program and that Plaintiff would be provided a decision in 2 weeks.**

40.     2 weeks passed and BOFA did not inform Plaintiff of BOFA's decision.

41.     Instead, on or about August 20, 2013, Plaintiff received a phone call from BOFA representative "Krista."  She indicated that the account had been transferred to SPS and that the modification was currently in underwriting under the DOJ modification.

42.     On or about August 20, 2013, Plaintiff spoke with SPS representative Mr. Glenny Enriquez. Mr. Enriquez indicated that the servicing of the loan was transferred to SPS on August 1, 2013.  According to Mr. Enriquez, a note by an SPS representative, Mr. Carter, indicated that a request was made to transfer the modification packet from BOFA to SPS.

43.     On or about October 22, 2013, Plaintiff contacted SPS and spoke with SPS representative Ms. Natasha Marquez who indicated that the application for NMSP was closed on September 27, 2013 because no prior documents were found pertaining to a NMSP modification.

44.     Ms. Marquez then transferred the call to SPS representative Ms. Daisy Mendoza.  Ms. Mendoza informed Plaintiff that the NMSP application was currently under review.  Ms. Mendoza indicated that SPS representative Ms. Debra Gherrity would be the new assigned representative.  Ms. Mendoza requested that Plaintiff wait an additional 30 days to review the NMSP application and at the end of the 30 days SPS would contact Plaintiff.

45.     SPS did not contact Plaintiff within 30 days.

46.     On or about December 23, 2013, Plaintiff called SPS requesting an update on his NMSP application.  The SPS representative indicated that the account was in "dispute status."  During this telephone conversation, the SPS representative indicated to Plaintiff that Plaintiff should submit the documentation again.  That same day, Plaintiff sent the documents via UPS.

47.     On or about February 10, 2014, Plaintiff contacted SPS representative Ms.

Megan Koontz regarding the status of his NMSP application.  Ms. Koontz indicated to Plaintiff that she will attempt to find out why Plaintiff's application was not submitted under the NMSP.  Ms. Koontz verified the letter from BOFA that Plaintiff pre-qualified for the NMSP.  Ms. Koontz indicated that she would escalate this matter to her supervisor "Ben" because her records indicated that it was not being reviewed under the NMSP.  Ms. Koontz indicated that she would be in contact with Plaintiff.

  48.  On or about May 13, 2014, Plaintiff received a correspondence from SPS alleging that not all the documents for Plaintiff's NMSP application were submitted.  SPS contends that several documents they cited needed to be provided for consideration.  However, Plaintiff *submitted all documents required under the NMSP* and that SPS's request called for *additional documents not required under the NMSP* for consideration under their "in-house" modification.

  49.  On or about June 5, 2014, Plaintiff submitted all documents as required under the NMSP program via USPS.  USPS tracking indicated that the documents were received.

  50.  On or about June 30, 2014, SPS representative Ms. Desiree Evan contacted Plaintiff by phone.  Ms. Evans explained to Plaintiff that she found the information on file and that Plaintiff "did qualify" for the NMSP program and indicated to Plaintiff that she would look into the status of his application and restart the process again.

  51.  On or about September 9, 2014, SPS representative Ms. Marcella Torrez contacted Plaintiff to discuss the NMSP.  Ms. Torrez indicated to Plaintiff that she too would look into the status of his NMSP application and get back to Plaintiff in 7 days.

  52.  SPS did not contact Plaintiff in 7 days.

  53.  On or about October 17, 2014, SPS representative Ms. Elaine Duhamel  called Plaintiff and indicated that she would look further into the NMSP application and why the matter was "in dispute."  Ms. Duhamel indicated that Plaintiff would be receiving a call back on the matter.

  54.  On or about October 27, 2014, SPS representative Ms. Torrez contacted Plaintiff and then transferred the call to SPS representative Mr. Victor Moore.  Mr. Moore indicated to Plaintiff that they were waiting for the dispute to be resolved.

  55.  On or about January 1, 2015, the DOJ National Settlement Program expired.

  56.  On or about February 27, 2015, a notice of default was recorded on Plaintiff's

7

**COMPLAINT**

home.

57.    On or about March 11, 2015, Plaintiff contacted SPS and SPS representative Ms. Caroline Lopatriello transferred the phone call to SPS representative Mr. Francisco Martinez.  Mr. Martinez indicated that the account has been turned over to SPS's attorney for a foreclosure action.  Mr. Martinez transferred the phone call to  Mr. Lloyd May of SPS's Ombudsmen department.  Mr. May indiciated to Plainiff that the NMSP program expired.  At this time, Plaintiff learned for the first time that the NMSP program expired  and that SPS will not consider Plaintiff for NMSP modifcation.

58.    Had Plaintiff known that the NMSP program was set to expire, Plaintiff would have filed a lawsuit prior to its expiration in order to induce a review of the NMSP application.  Defendants led Plaintiff to believe that he wa still under consideration.

59.    On or about April 1, 2015, Plaintiff contacted SPS regarding the DOJ modification and consideration under the program.  SPS representative Mr. Dmajuwon Baker transferred the call to Mr. Theodore Morris.  Mr. Morris indicated to Plaintiff that a foreclosure proceeding was commenced on or about December 2014 and not February 27, 2015.  Plaintiff indicated that he did not receive any such notice.  Mr. Morris indicated that Plaintiff's file is in dispute and that foreclosure proceedings have been halted although no formal writing can be provided.  Mr. Morris indicated that a modification has been opened under SPS's in house program but that program does not include an opportunity to obtain principal reduction. Mr. Morris indicated that a packet was forwarded to Plaintiff.  Plaintiff never received an in-house modification application packet.  Instead, only received notices that an in-house modification packet would be sent.  Plaintiff indicated that he wished to be reviewed under the NMSP based on NMSP guidelines and potential NSMP benefits.   SPS' refusal to review Plaintiff under the NMSP greatly damaged Plaintiff.

60.    On or about April 13, 2015, Plaintiff received a letter from SPS representative Ms. Lorna Paden indicating that Plaintiff's loan modification was denied for lack of documentation on May 13, 2014.  The letter does not reference the documents submitted to SPS on June 5, 2014.   The letter comes nearly one year after Plaintiff submitted a complete loan modification document under the NMSP.  The review Plaintff would be entitled to date would not allow for a a reduction in principal on the loan as indicated by the letter and Plaintiff would be ineligible for an NMSP review despite having submitted a complete set of NMSP

application documents on or about June 5, 2014.

61.   As a result of BOFA's representation that Plaintiff qualified for the NMSP, Plaintiff relied on this representation and dismissed his first lawsuit against BOFA. BOFA then led Plaintiff to believe that they would process Plaintiff's modification application only to transfer the servicing of the loan to SPS despite representations by BOFA that a decision on Plaintiff's application would be imminent.

62.   Furthermore, SPS deliberately delayed and refused to submit Plaintiff's application under the NMSP despite evidence from Plaintiff and BOFA that Plaintiff's home pre-qualified for consideration under the NMSP. SPS's insistence that he would be under review for the NMSP modification and SPS's refusal to submit Plaintiff's NMSP application before NMSP's expiration has caused significant damage to Plaintiff.

63.   As a result of Defendants' false and misleading representations, Plaintiff has be denied an golden opportunity to obtain principal reductions through the NMSP. Defendants' actions were wilfull and intent on denying Plaintiff an opportunity to avail of an important national program intended to remedy the precise wrongdoing administered by Defendants. Plaintiff seeks to enjoin Defendants from foreclosing on Plaintiff's home, general, damages, costs of suit, and reasonable attorney fees as permitted by statute, and any other remedy deemed just and proper by the Court.

## FIRST CAUSE OF ACTION

### FALSE PROMISE

### (AGAINST BOFA AND SPS)

64.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

65.   Defenant BOFA made a promise to PLAINTIFF to review his loan under the National Mortgage Settlement program.

66.   Defenadant BOFA had no intention to review PLAINTIFF under the National Mortgage Settlement program.

67.   Defendant BOFA intended on PLAINTIFF to rely on this promise to review PLAINTIFF under the National Mortgage Settlement program.

68.   Plaintiff reasonably relied on Defendant BOFA's promise that Defendant BOFA

would review PLAINTIFF under the National Mortgage Settlement program.

69.   Defendant BOFA did not review PLAINTIFF under the National Mortgage Settlement program.

70.   Defendant BOFA's failure to review PLAINTIFF under the National Mortgage Settlement program before it expired greatly harmed PLAINTIFF.

71.   PLAINTIFF's reliance on Defendant BOFA's promise is a substantial factor in causing PLAINTIFF harm because he withdrew his original case against BOFA and lost an opportunity to obtain the possibility of reducing the prinipal of his mortgage through the National Mortgage Settlement program at a time where Plainiff would have received a substantial reduction in principal.

72.   Defendant SPS made a promise to PLAINTIFF to review his loan under the National Mortgage Settlement program and to look into the program for PLAINTIFF.

73.   Defenadant SPS had no intention to review PLAINTIFF under the National Mortgage Settlement program and represented to PLAINTIFF that they would look further into BOFA's representation that PLAINTIFF qualified for the National Mortgage Settlement program.

74.   Defendant SPS intended on PLAINTIFF to rely on this promise to review PLAINTIFF under the National Mortgage Settlement program and to review the circumstances of the promises BOFA made to PLAINTIFF.

75.   PLAINTIFF reasonably relied on Defendant SPS' promise that Defendant SPS would review PLAINTIFF under the NMSP.  The promise and belief that PLAINTIFF was under review by Defendants induced PLAINTIFF not to file an action prior to the expiration of the NMSP.

76.   Defendant SPS did not review PLAINTIFF under the National Mortgage Settlement program or review the circumstances of PLAINTIFF's application as promised.

77.   Defendant SPS's failure to review PLAINTIFF under the National Mortgage Settlement program before it expired greatly harmed PLAINTIFF because it denied him an opportunity to obtain relief under the NMSP program.

78.   PLAINTIFF's reliance on Defendant SPS' promise is a substantial factor in causing PLAINTIFF harm because he lost an opportunity to obtain the possibility of reducing the prinipal of his mortgage throught the National Mortgage Settlement program despite

10

COMPLAINT

indications that PLAINTIFF was pre-qualified for the National Mortgage Settlement program.`

## SECOND CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION

### (AGAINST BOFA AND SPS)

79.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

80.    Defendant BOFA represented to PLAINTIFF that PLAINTIFF was prequalified for the National Mortgage Settlement program and that BOFA would process PLAINTIFF'S application through the program.   Defendant BOFA also orally indicated that Plaintiff pre-qualified for the NMSP and all that was required for consideration is submission of the requested documents.

81.    Defendant BOFA's representations were not true.

82.    Although Defendant BOFA may have honestly believed that the representations wer true, Defendant BOFA had no reasonable ground for believing the representations were true.

83.    Defendant BOFA intended that PLAINTIFF rely on the representations made to PLAINTIFF that Defendant BOFA would consider PLAINTIFF under the NMSP and that while PLAINTIFF was being reviewed for the program, Defendant BOFA would not commence foreclosure proceedings.

84.    PLAINTFF reasonably relied on Defendant BOFA's representation.

85.    PLAINTIFF was harmed as a result of Defendant's representation.

86.    PLAINTIFF's reliance on Defendant BOFA's representation was a substantial factor in leading to PLAINTIFF'S harm because PLAINTIFF's dismissed his first lawsuit and PLAINTIFF did not take advantage of PLAINTIFF's opportunity to have his loan reviewed under the NMSP and was unable to obtain a reduction on the principal of his mortgage due BOFA's delay tactics.

87.    PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88.    Defendant SPS represented to PLAINTIFF that SPS would review and look into

11

**COMPLAINT**

PLAINTIFF's prequalification and request under the National Mortgage Settlement program and SPS would process PLAINTIFF'S application through the program.

89.   Defendant SPS's representations were not true.

90.   Although Defendant SPS may have honestly believed that the representations wer true, Defendant SPS had no reasonable ground for believing the representations were true.

91.   Defendant SPS intended that PLAINTIFF rely on the representations made to PLAINTIFF that Defendant SPS would investigate in a timely manner PLAINTIFF's elgibility under the National Mortgage Settlement program and that while PLAINTIFF was being reviewed for the program, Defendant SPS would not commence foreclosure proceedings.

92.   PLAINTIFF reasonably relied on Defendant SPS's representations and was induced into not filing a lawsuit to compel review of PLAINTIFF's modification under the NMSP.

93.   PLAINTIFF was harmed as a result of Defendant SPS' representations by Defendant's filing of a notice of default against PLAINTIFF.

94.   PLAINTIFF's reliance on Defendant SPS's representations were a substantial factor in leading to PLAINTIFF'S harm because PLAINTIFF did not obtain a review of his loan under the NMSP before it expired and thus lost an opportunity file a lawsuit induce a review of PLAINTIFF'S loan under the NMSP and a possible reduction in principal.

## THIRD CAUSE OF ACTION
## VIOLATION OF CAL CIV CODE § 2923.6 (d)
## (AGAINST ALL DEFENDANTS)

95.   California Civil Code Section 2923.6 (d) provides that:

> "If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error."

96.   The communications PLAINTIFF has received have been mixed at best. PLAINTIFF did not receive a written denial or the basis for the denial of the NMSP application.

97.   California Civil Code 2923.6 (f)(1-5) provides that:

12

**COMPLAINT**

"Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative."

98.    DEFENDANTS failed to provide a written notice identifying the reasons PLAINTIFF was denied a first lien loan modification as mandated by 2923.6 (f)(1-5) for the loan application submitted on June 30, 2014.

99.    PLAINTIFF alleges that, to this date, DEFENDANTS continue to violate provisions under Cal Civ Code §2923.6 et seq. by not providing the basis for denial of PLAINTIFF'S application after Defendants' denial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIVIL CODE §2924.10

13

COMPLAINT

**(AGAINST ALL DEFENDANTS)**

100.   PLAINTIFF re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.   California Civil Code §2924.10 provides that:

"When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:

(1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

(2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

(3) Any expiration dates for submitted documents.

(4) Any deficiency in the borrower's first lien loan modification application.

(b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e) This section shall remain in effect only until January 1, 2018,

14

**COMPLAINT**

and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

102.   DEFENDANTS  did not provide PLAINTIFF with a written acknowledgment of receipt of PLAINTIFF's loan modification or the requisite notices mandated by California Civil Code §2924.10  DEFENDANTS, to this day, continue to be in violation of these provisions.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE §2924.18
### (FOR ALL DEFENDANTS)

103.   Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

104.   California Civil Code §2924.18 provides that:

> "If a borrower submits a complete application for a first lien loan modification offered by, or though, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."

105.   PLAINTIFF submitted completed loan modification applications on or about March 23, 2013, June 7, 2013, and an updated national Mortgage Settlement Program application on June 24, 2013.  DEFENDANTS did not provide a written determination on the denial of the application except for an erroneous statement implying Defendant "withdrew" his application.  DEFENDANTS filed a Notice of Default on February 27, 2015.  PLAINTIFF continues to be in active negotiations for a loan modification when SPS filed the notice of default illegally. To this day, PLAINTIFF has not received a written rejection of his original loan modification under the National Mortgage Settlement program.  In addition, DEFENDANTS failed to rescind the notice of default filed on February 27, 2015.

106.   DEFENDANTS continue to violate California Civil Code §2924.18

## SIXTH CAUSE OF ACTION

### FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF

### BUSINESS AND PROFESSIONS CODE 17200, et seq

### (AGAINST ALL DEFENDANTS)

107. Beginning on the dates indicated, and at all times relevant herein, DEFENDANTS, and each of them, have committed acts of unfair competition proscribed by California's Unfair Competition Law ("UCL") including the practices alleged herein against PLAINTIFF.

108. DEFENDANTS have each committed unlawful acts which have included, but are not limited to:

a. Falsely indicating to PLAINTIFF that he would be considered for the Department of Justice Modification and not submitting the application to underwriting.

b. Falsely indicating to PLAINTIFF that PLAINIFF would be reviewed under the National Mortgage Settlement program only to delay the process to the point where the National Mortgage Settlement program expired.

c. Falsely accusing PLAINTIFF of withdrawing the National Mortgage Settlement program application in an effort to deny PLAINTIFF an opportunity to avail of the relief provided under the program.

d. Recording false notices that state PLAINTIFF received all required lawful notices prior to proceeding with the foreclosure procedure;

e. Failing to acknowledge receipt of PLAINTIFF's loan modification documents and accusing PLAINTIFF of not providing the loan modification application documents;

f. Ignoring PLAINTIFF's inquiries as to the status of his loan modification application;

g. Misleading PLAINTIFF into believing that DEFENDANTS would not file a foreclosure proceeding documents;

h. Dual tracking the loan modification application process and foreclosure proceedings in violation of the California Homeowners Bill of Rights.

16

**COMPLAINT**

109. DEFENDANTS made one or more misrepresentations and failed to make accurate representations and/or failed to provide material information about the transactions set forth above.

110. The business acts and practices of these DEFENDANTS, as hereinabove alleged, constitute "unlawful" business practices under UCL in that, for the reasons set forth above, said acts and practices violate the provisions of California *Civil Code* section 2924, *et seq.*, the contract between the parties, and DEFENDANTS' fiduciary duties.

111. The business acts and practices of these DEFENDANTS, as hereinabove alleged, constitute "unfair" business practices under UCL in that said acts and practices offend public policy and are substantially injurious to PLAINTIFF and all consumers. Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial harm to PLAINTIFF and other consumers, and potential homeowners.

112. The business acts and practices of DEFENDANTS, as hereinabove alleged, constitute "fraudulent" business practices under UCL in that said acts and practices are likely to deceive the public and affect consumers' legal rights and obligations. Indeed, DEFENDANTS' acts, including but not limited to active deception, falsifying documents, failing to deliver material documents, and concealment, may preclude consumers from exercising legal rights to which they are entitled.

113. The unlawful, unfair and fraudulent business acts and practices of DEFENDANTS described herein present a continuing threat to members of the General Public and to PLAINTIFFS in that DEFENDANTS and the DOE DEFENDANTS are currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

114. Furthermore, PLAINTIFFS' wrongful foreclosure claims also serve as predicate violations for UCL purposes.

115. Pursuant to California *Business and Professions Code* section 17203, PLAINTIFFS seek an order enjoining DEFENDANTS from engaging in the acts and practices as hereinabove alleged, and an order that DEFENDANTS provide appropriate restitution to PLAINTIFFS.

116. PLAINTIFFS seek recovery of attorney's fees, costs and expenses incurred in the filing and prosecuting of this action pursuant to the California *Code of Civil Procedure*

17

**COMPLAINT**

section 1021.5 and any other applicable law.

## PRAYER FOR RELIEF

117.   WHEREFORE PLAINTIFFS, will ask for the following Cause of Action to be awarded:

### FOR THE FIRST CAUSE OF ACTION

1.  For general damages subject to proof at time of trial.

2.  For special damages subject to proof at time of trial.

3.  For costs of suit incurred herein.

4.  For reasonable attorney's fees subject to proof at time of trial.

5.  For such other and further relief as the Court may deem just and proper.

### FOR THE SECOND CAUSE OF ACTION

1.  1.  For general damages subject to proof at time of trial.

2.  For special damages subject to proof at time of trial.

3.  For costs of suit incurred herein.

4.  For reasonable attorney's fees subject to proof at time of trial.

5.  For such other and further relief as the Court may deem just and proper.

### FOR THE THIRD CAUSE OF ACTION

1.  For treble actual damages or statutory damges of fifty thousand dollars ($50,000.) pursuant to California Civil Code §2924.12.

2.  Attorneys fees pursuant to California Civil Code §2924.12(i).

3.  Injunctive relief to prevent the Trustee Sale of the SUBJECT PROPERTY pursuant to California Civil Code §2924.12.

### FOR THE FOURTH CAUSE OF ACTION

1.  For treble actual damges or statutory damages of fifty thousand dollars ($50,000.00) pursuant to California Civil Code §2924.12.

2.  Attorneys fees pursuant to California Civil Code §2924.12(i).

3.  Injunctive relief to prevent the trustee sale of the SUBJECT PROPERTY pursuant to California Civil Code §2924.12.

### FOR THE FIFTH CAUSE OF ACTION

18

**COMPLAINT**

1.   For treble actual damages or statutory damages of fifty thousand dollars ($50,000.00) pursuant to California Civil Code §2924.19

2. Attorneys fees pursuant to California Civil Code §2924.19(i).

3. Injunctive relief to prevent the trustee sale of the SUBJECT PROPERTY pursuant to California Civil Code §2924.19.

**FOR THE SIXTH CAUSE OF ACTION**

1. For general damages subject to proof at time of trial.

2. For special damages subject to proof at time of trial.

3. For costs of suit incurred herein.

4. For reasonable attorney's fees subject to proof at time of trial.

5. For such other and further relief as the Court may deem just and proper.

Dated: May 4, 2015                          MANASAN LAW GROUP, PC

_____
Rowel S. Manasan, Esq.
Attorney for Plaintiff Donald Okada

19

**COMPLAINT**

# EXHIBIT A

# Important Message:

**You meet the criteria to apply for a modification program as part of a national mortgage settlement. Qualifying customers will receive significant principal reduction and may reduce their monthly payment up to 39%.**

March 01, 2013

Donald Okada
PO Box 3208
Huntington Beach, CA 92605 3208

**Bank of America**  **Home Loans**

Please complete, sign and return all the enclosed documents by **March 31, 2013** to see if you qualify.

Dear Donald Okada:

Loan Number ████████

We are pleased to let you know that you meet the criteria required to apply for a new modification program recently announced as a result of the U.S. Department of Justice and State Attorneys General national settlement with major mortgage servicers, including Bank of America, N.A.

If you qualify for this modification, any past due late fees will be waived, interest and advances that we paid on your behalf will be added to your principal balance, principal reduction will be applied and your loan will be brought up to date.

Here's how this modification works. The example below was created using actual results of this program to demonstrate the potential savings or benefit a customer could receive if eligible for a modification under this program. These numbers are estimates only and actual savings may vary, however **you must apply for this modification to see if you qualify.**

Savings Example:

| How This Modification Works | | Customer Benefit | | |
|---|---|---|---|---|
| Unpaid Principal Balance Before Modification | $504,000 | | Before Modification | **After Modification** |
| Unpaid Interest and Advances (+) | $64,000 | Total Amount Outstanding | $568,000 | **$336,000 (41% Reduction)** |
| Total Amount Outstanding Before Modification (=) | $568,000 | Days Past Due | 750 Days | **0 Days (Loan Brought Current)** |
| Principal Reduction (-) | $232,000 | Monthly Principal and Interest Payment | $2,850 | **$1,750 (39% Reduction)** |
| Modified Loan Balance (=) | $336,000 | | | |

Please note that escrow/impound for taxes and insurance will be required as part of this modification. If you qualify, the escrow payment amount will be added to the new monthly principal and interest payment. In some cases an interest rate reduction will also be applied as part of this modification. Please see the enclosed Frequently Asked Questions for more information.

**What you need to do**
- To help us determine if you qualify for this principal reduction modification program, please send us the requested financial information listed in the enclosed checklist by **March 31, 2013.** We have provided a pre-paid envelope for your convenience. Within 30 days of receiving all of your documents, we will send you an approval or decline letter explaining next steps.
- Please be sure to promptly respond to any requests you receive from us.
- Please read the enclosed Frequently Asked Questions that includes important information on taxes and foreclosure.
- For general information about the settlement, visit bankofamerica.com/principalreduction.

**We are here to help**
We want to help you avoid foreclosure and strongly encourage you to apply for this new program. Please note that if we do not receive your documents by **March 31, 2013** we will continue normal activities for collecting past due loan payments. Please consult with your attorney to contact the law firm representing Bank of America, N.A. regarding the above loan number if you have any questions regarding the attached documentation. If you are self-represented, please contact the law firm representing Bank of America, N.A.

C3_3013-5

Home Loan Team
Bank of America, N.A

*Enclosures: (1) Frequently Asked Questions (2) Checklist (3) IRS Form 4506-T (4) Profit and Loss Statement*
*(5) Pre-paid return envelope*

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.

In order to expedite your loan modification process, Bank of America, N.A. is working with a third party company, Home Retention Services, Inc. Federal law requires that we communicate to you that Bank of America is a debt collector and also that Home Retention Services, Inc. is a licensed debt collector. However, the purpose of the communication is to let you know about your potential eligibility for this loan modification program that may help you bring or keep your loan current through more affordable payments.

<u>MILITARY PERSONNEL/SERVICEMEMBERS:</u> If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to eligible military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1.877.430.5434. If you are calling from outside the U.S. please contact us at 1.817.685.6481.

Mortgages funded and administered by an Equal Housing Lender.
Protect your personal information before recycling this document.

C3_3013-6

## Frequently Asked Questions

**Q. What is the government settlement about?**
The U.S. Department of Justice and certain State Attorneys General have announced terms of a settlement with the largest mortgage servicers, including Bank of America. This settlement addresses claims based on allegations about foreclosure, loan modification, and loss mitigation practices. As part of that settlement, Bank of America has agreed to develop this new modification program that allows us to offer substantial principal reduction savings to customers who qualify. Please visit bankofamerica.com/principalreduction for more information on the settlement.

**Q. If I am approved for this modification, will I owe taxes on the amount forgiven?**
This varies based on your personal situation. Because we would be forgiving a portion of your loan, we are required under federal law to report this debt reduction to the Internal Revenue Service (IRS) as possible taxable income to you unless you previously received a discharge of this debt under applicable bankruptcy law. Please consult with your own tax advisor to determine whether you may exclude the debt reduction from your reported income. You can also find useful information at www.irs.gov (search: mortgage forgiveness).

**Q. What if I am in bankruptcy proceedings?**
If you are represented by an attorney, we must speak with your attorney or have your attorney's permission to speak with you about this program. He or she must complete and fax an Attorney Authorization Form for Customers in Active Bankruptcy to us at 1.866.270.0620 before we discuss any details directly with you. If we have not yet received this form, an additional copy is included in this package.

In addition, please consult with your attorney about how these programs could affect your mortgage and your bankruptcy case. Because you are in bankruptcy, any final modification of your mortgage will require bankruptcy court approval. If you are in Chapter 13 bankruptcy, you may also be required to amend your bankruptcy plan. Your bankruptcy attorney can assist you with that process.

If you are currently making your mortgage payments to a Trustee, please note that all funds we receive from the Trustee during the loan modification review, trial period, and court approval process will be applied and credited to your account if you are in an active bankruptcy.

**Q. Will a foreclosure occur if I participate in a modification program?**

**Important—Do not ignore any foreclosure notices.**

If you meet the deadline to apply for this program, our review of your loan for a modification and the process of foreclosure may proceed at the same time. While we will take steps to suspend a foreclosure sale if one is pending, you may receive foreclosure/eviction notices - delivered by mail or in person - or you may see steps being taken in preparation for a foreclosure sale of your home. To protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you do not understand the legal consequences of the foreclosure, you are also encouraged to contact a lawyer or housing counselor for assistance.

**Q. Will my interest rate and principal and interest payment be fixed if my loan is modified?**
If your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your loan, unless your initial modified interest rate is below current market interest rates. In that case, the below market interest rate will be fixed for five years. At the end of the fifth year, your interest rate may increase by 1% per year until it reaches a cap. The cap will equal the market rate of interest being charged by mortgage lenders on the day your modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey® rate for 30-year, fixed-rate conforming mortgages). Once your interest rate reaches the cap it will be fixed for the remaining life of your loan. Your new monthly payment will include an escrow for property taxes, hazard insurance and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses changes, your monthly payment will change as well.

**Q. If I am in the deed in lieu or Mortgage to Lease™ process, may I still apply for a principal reduction modification?**
If you are currently in review for a deed in lieu or the Mortgage to Lease™ program, you may apply for the principal reduction modification program. It is important to consider all of your options and determine which one is best for you, given your personal situation. Please call deed in lieu customer care at 1.877.430.3411 if you have questions regarding your deed in lieu or Mortgage to Lease™ in process.

C3_2013-6

**Q. If I am in the short sale process, may I still apply for a principal reduction modification?**
If you are currently in review for a short sale, you may apply for the principal reduction modification program. It is important to consider all of your options and determine which one is best for you, given your personal situation. If you choose to be considered for the modification program, you should reach out to trusted advisors such as your real estate agent or legal counsel to determine how to resolve any issues you may encounter regarding a short sale in process. Please call short sale customer care at 1.866.880.1232 if you have questions regarding your short sale in process.

**Q. Are there any special programs for military personnel?**
Bank of America is dedicated to assisting our military customers with their home loan needs. Please contact us at 1.877.430.5434 if you are currently on active military duty or were released from active duty within the last nine months so that we can work with you to determine if this program is right for you.

C3_3013-6

**Document Checklist**

> **Each borrower on the loan must complete and return all of the applicable documents.**
> **Please send us copies of each document and keep the originals for your records.**
> **Updated or additional documents may be required.**

***For each borrower who receives a salary or hourly wages:***
- Copy of the most recent pay stub (or Leave and Earnings Statements for military borrowers)

***For each self-employed borrower:***
- Enclosed profit/loss statement – completed and signed

***For each borrower who receives income such as Social Security, disability or death benefits, pension, adoption assistance or public assistance:***
- Request for Transcript of Tax Return (IRS 4506-T) - completed and signed, **and**
- Copy of benefits statement or letter from the provider that states the amount, frequency and duration of the benefit, **or**
- Copy of the most recent bank statement (all pages) showing receipt of such payment

***For each borrower who chooses the option to have alimony, child support or separation maintenance considered as qualifying income:***
- Copy of divorce decree, separation agreement or other written agreement filed with the court, or equivalent document that states the amount and period of time over which the payment will be received (evidence that future payments will continue for 12 months), **and**
- Copy of the most recent bank statement (all pages), deposit slip, or cancelled check showing receipt of such payment

***For each borrower who receives rental/boarder income:***
- If the property is occupied by the borrower:
  - Copy of the most recent bank statement (all pages) or cancelled checks showing receipt of rental income payment **and,**
  - Signed letter from borrower detailing:
    - Properties that are tenant occupied
    - Amount of rent received
    - Monthly payments and name of lender for any mortgages
    - Monthly taxes and insurance (if not impounded)
    - Any homeowners association dues
- If the property is **not** occupied by the borrower:
  - Copy of the most recent bank statement (all pages) or cancelled checks showing receipt of rental income payment **and,**
  - Copy of the lease agreement

C3_3013-6

Form **4506-T**
(Rev. January 2012)
Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

▶ Request may be rejected if the form is incomplete or illegible.

OMB No. 1545-1872

Tip. Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Order a Transcript" or call 1-800-908-9946. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first.<br><br>DONALD OKADA | 1b First social security number on tax return, individual taxpayer identification number, or employer identification number (see instructions) |
|---|---|
| 2a If a joint return, enter spouse's name shown on tax return. | 2b Second social security number or individual taxpayer identification number if joint tax return |

3   Current name, address (including apt., room, or suite no.), city, state, and ZIP code (see instructions)

Donald Okada, 316-316 1/2 IRIS AVENUE, NEWPORT BEACH, CA 92625

4   Previous address shown on the last return filed if different from line 3 (see instructions)

5   If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number.

Bank of America, N A
C/O Home Retention Services, Inc
9703 Bissonnet Street, Suite 1500
Houston, TX 77036                                                                            UserID: JNADEAU1

**Caution.** *If the tax transcript is being mailed to a third party, ensure that you have filled in lines 6 through 9 before signing. Sign and date the form once you have filled in these lines. Completing these steps helps to protect your privacy. Once the IRS discloses your IRS transcript to the third party listed on line 5, the IRS has no control over what the third party does with the information. If you would like to limit the third party's authority to disclose your transcript information, you can specify this limitation in your written agreement with the third party.*

6   Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶   1040

a   **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. A tax return transcript does not reflect changes made to the account after the return is processed. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days   .   .   .   .   .   .   ☒

b   **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days   .   ☐

c   **Record of Account,** which provides the most detailed information as it is a combination of the Return Transcript and the Account Transcript. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days   .   .   .   .   .   ☐

7   **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Current year requests are only available after June 15th. There are no availability restrictions on prior year requests. Most requests will be processed within 10 business days   .   ☐

8   **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2010, filed in 2011, will not be available from the IRS until 2012. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days   .   .   ☐

**Caution.** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

9   **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.   12 / 31 / 2010      12 / 31 / 2011

Check this box if you have notified the IRS or the IRS has notified you that one of the years for which you are requesting a transcript involved identity theft on your federal tax return   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   ☐

**Caution.** Do not sign this form unless all applicable lines have been completed.

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer. **Note.** *For transcripts being sent to a third party, this form must be received within 120 days of the signature date.*

Phone number of taxpayer on line 1a or 2a

**Sign Here**

▶ Signature (see instructions)                                           Date

Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ Spouse's signature                                                          Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.                  Cat. No. 37667N                  Form **4506-T** (Rev. 1-2012)

Form 4506-T (Rev. 1-2012)                                                                                                    Page **2**

Section references are to the Internal Revenue Code unless otherwise noted.

## What's New

The IRS has created a page on IRS.gov for information about Form 4506-T at *www.irs.gov/form4506*. Information about any recent developments affecting Form 4506-T (such as legislation enacted after we released it) will be posted on that page.

## General Instructions

**CAUTION.** *Do not sign this form unless all applicable lines have been completed.*

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate (on line 5) a third party to receive the information. Taxpayers using a tax year beginning in one calendar year and ending in the following year (fiscal tax year) must file Form 4506-T to request a return transcript.

**Note.** If you are unsure of which type of transcript you need, request the Record of Account, as it provides the most detailed information.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different addresses, send your request to the address based on the address of your most recent return.

**Automated transcript request.** You can quickly request transcripts by using our automated self-help service tools. Please visit us at IRS.gov and click on "Order a Transcript" or call 1-800-908-9946.

### Chart for individual transcripts (Form 1040 series and Form W-2 and Form 1099)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, American Samoa, Puerto Rico, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 |
| Alaska, Arizona, Arkansas, California, Colorado, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888  559-456-5876 |
| | 512-460-2272 |
| Connecticut, Delaware, District of Columbia, Florida, Georgia, Maine, Maryland, Massachusetts, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia | RAIVS Team Stop 6705 P-6 Kansas City, MO 64999  816-292-6102 |

### Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409  801-620-6922 |
| Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250  859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) or your individual taxpayer identification number (ITIN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 3.** Enter your current address. If you use a P.O. box, include it on this line

**Line 4.** Enter the address shown on the last return filed if different from the address entered on line 3.

**Note.** If the address on lines 3 and 4 are different and you have not changed your address with the IRS, file Form 8822, Change of Address.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 120 days of the date signed by the taxpayer or it will be rejected. Ensure that all applicable lines are completed before signing.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the letters testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. You are not required to request any transcript; if you do request a transcript, sections 6103 and 6109 and their regulations require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form**, 10 min.; **Preparing the form**, 12 min.; and **Copying, assembling, and sending the form to the IRS**, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to:

Internal Revenue Service
Tax Products Coordinating Committee
SE:W:CAR:MP:T:M:S
1111 Constitution Ave. NW, IR-6526
Washington, DC 20224

Do not send the form to this address. Instead, *see Where to file on this page.*

 

# PROFIT AND LOSS STATEMENT
### (for self-employed borrowers only)

Please complete a separate Profit and Loss Statement for each business owned by the borrower(s).

**Company Name:**

**Type of Business:**

**For the period:** _____ through _____
dd/mm/yyyy                          dd/mm/yyyy

**Name(s) of Borrower(s):**

---

**Income:**            Gross Sales and Receipts..................................................

**Other Income:**      Other Income (interest, fees earned, etc.)............................

**Total Income (Gross Sales + Other Income)**

**Business-Only**      Salaries Paid to Owners (other than me/us)...............
**Expenses:**          Salaries Paid to Employees (other than me/us)..........
                       Benefits to Owners/Employees (other than me/us)......
                       Payroll Taxes............................................................
                       Business Utilities.......................................................
                       Business Rent and/or Mortgage Payments...............
                       Insurance.................................................................
                       Advertising...............................................................
                       Telephone................................................................
                       Office Expenses.......................................................
                       Repairs and Maintenance.........................................
                       Business Travel, Meals, and Entertainment...............
                       Other Business Expenses.........................................

**Total Business Expenses**

**Net Income/Loss:**   (Total Income minus Total Expenses)

**Amount of Net Income That Borrower(s) Received**

This form accurately states my/our business expenses and self-employed income for the stated period.

_____     _____
Borrower Signature                          Date

_____     _____
Co-Borrower Signature                       Date

_____
Loan Number



152823338*BACBSMFDR_LMT_L3_02282013