# EXHIBIT A

APN:
052-092-07

RECORDING REQUESTED BY
NEW CENTURY TITLE COMPANY

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Recording Requested By:
S. GLASS

**93.00**

**2006000781337 04:30pm 11/17/06**

108 73 D11 30

0.00 0.00 0.00 0.00 87.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ZINNIA MADLANGBAYAN

[Space Above This Line For Recording Data]

10394          00015282333811006
[Escrow/Closing #]       [Doc ID #]

# DEED OF TRUST

MIN 1001337-0001803649-4

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated NOVEMBER 15, 2006 , together with all Riders to this document.
**(B) "Borrower" is**
DONALD OKADA, A SINGLE MAN

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

 -6A(CA) (0207)  CHL (08/05)(d)  VMP Mortgage Solutions, Inc. (800)521-7291      **Form 3005 1/01**
CONV/VA

* 23991 *

* 1 5 2 8 2 3 3 3 8 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00015282333811006

Borrower's address is
47 SILVERPINE, NEWPORT BEACH, CA 92657
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
**(D) "Trustee"** is
RECON TRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated NOVEMBER 15, 2006 . The
Note states that Borrower owes Lender
ONE MILLION SIX HUNDRED TEN THOUSAND and 00/100

Dollars (U.S. $ 1,610,000.00     ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than DECEMBER 01, 2036 .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

VMP® -6A(CA) (0207)          CHL (08/05)          Page 2 of 16          Form 3005 1/01

DOC ID #: 00015282333811006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                     of              ORANGE                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                    which currently has the address of
316-316 1/2 IRIS AVENUE, NEWPORT BEACH
[Street/City]
California      92625      ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

VMP ®-6A(CA) (0207)        CHL (08/05)            Page 5 of 16                    Form 3005 1/01

DOC ID #: 00015282333811006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Case 8:15-cv-00981-CJC-E   Document 11-1   Filed 06/25/15   Page 6 of 103   Page ID #:189

DOC ID #: 00015282333811006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

VMP® -6A(CA) (0207)     CHL (08/05)     Page 5 of 16     Form 3005 1/01

DOC ID #: 00015282333811006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00015282333811006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 00015282333811006

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 00015282333811006

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

-6A(CA) (0207)          CHL (08/05)          Page 9 of 15          Form 3005  1/01

DOC ID #: 00015282333811006

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

VMP® -6A(CA) (0207)       CHL (08/05)       Page 10 of 16       Form 3005  1/01

DOC ID #: 00015282333811006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

VMP® -6A(CA) (0207)        CHL (08/05)           Page 11 of 16                Form 3005  1/01

DOC ID #: 00015282333811006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00015282333811006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken. that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides. volatile solvents, materials containing asbestos or formaldehyde. and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence. use. disposal. storage. or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do. nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law, Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

VMP⑥  -6A(CA) (0207)        CHL (08/05)        Page 13 of 16                    Form 3005  1/01

DOC ID #: 00015282333811006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)          CHL (08/05)          Page 14 of 16          Form 3005  1/01

DOC ID #: 00015282333811006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DONALD OKADA                          -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

-6A(CA) (0207)        CHL (08/05)        Page 15 of 16              Form 3005  1/01

DOC ID #: 00015282333811006

State of California
County of Orange     } ss.

On November 15, 2006 before me, Kimberly Sue Church, personally appeared

Donald Okeda

_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

KIMBERLY SUE CHURCH
Commission # 1414082
Notary Public - California
Orange County
My Comm. Expires Apr 29, 2007

-6A(CA) (0207)     CHL (08/05)     Page 16 of 16     Form 3005 1/01

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY                    :   *KIMBERLY SUE CHURCH*

COMMISSION NUMBER        :   *1414082*

DATE COMMISSION EXPIRES  :   *4-29-07*

COUNTY WHERE BOND IS FILED :   *O.C.*

MANUFACTOR/VENDOR NUMBER :   *NNA1*

PLACE OF EXECUTION        :   *O.C*

DATE                          :   *11-17-06*

SIGNATURE

Order No. 9061981

**Exhibit "A"**

Lot 18 in Block 236 of Corona Del Mar, in the City of Newport Beach, as shown on a Map thereof recorded in Book 3, Pages 41 and 42, Miscellaneous Maps, records of said Orange County, California

Prepared by: ZINNIA MADLANGBAYAN

**Countrywide Bank, N.A.**

Branch #: 0000245
1 PARK PLAZA
IRVINE, CA 92614
Phone: (949)474-3295
Br Fax No.: (949)474-0248

DATE:          11/15/2006
CASE #:
DOC ID #:      00015282333811006
BORROWER: DONALD OKADA
PROPERTY ADDRESS: 316-316 1/2 IRIS AVENUE
                  NEWPORT BEACH, CA 92625

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:

COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
ZINNIA MADLANGBAYAN


10394                    00015282333811006
[Escrow/Closing #]          [Doc ID #]


MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 5

-57R (0411)        CHL (11/04)(d)                                    Initials
                   VMP Mortgage Solutions, Inc. (800)521-7291        Form 3170 1/01

* 2 3 9 9 1 *                          * 1 5 2 8 2 3 3 3 8 0 0 0 0 0 1 0 5 7 R *

DOC ID #: 00015282333811006

THIS 1-4 FAMILY RIDER is made this FIFTEENTH day of NOVEMBER, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Countrywide Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

316-316 1/2 IRIS AVENUE, NEWPORT BEACH, CA 92625

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

Initials:

-57R (0411)          CHL (11/04)          Page 2 of 5                    Form 3170 1/01

DOC ID #: 00015282333811006

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument; and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

VMP -57R (0411) CHL (11/04) Page 3 of 5

Initials:     Form 3170 1/01

DOC ID #: 00015282333811006

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0411)        CHL (11/04)              Page 4 of 5

Initials:

Form 3170 1/01



DOC ID #: 00015282333811006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

DONALD OKADA

_____ (Seal)
                            - Borrower

_____ (Seal)
                            - Borrower

_____ (Seal)
                            - Borrower

_____ (Seal)
                            - Borrower

VMP -57R (0411)      CHL (11/04)          Page 5 of 5            Form 3170 1/01

# MONTHLY ADJUSTABLE RATE PAYOPTION RIDER
### (MTA Twelve Month Average Index - Payment Caps)

| 10394 | 152823338 |
|---|---|
| [Escrow/Closing #] | [Loan #] |

THIS ADJUSTABLE RATE RIDER is made this FIFTEENTH     day of
NOVEMBER, 2006  . and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

316-316 1/2 IRIS AVENUE
NEWPORT BEACH, CA 92625
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

   **ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for changes in the interest rate and the monthly payments, as follows:

**2.   INTEREST**
   **(A)  Interest Rate**
   Interest will be charged on unpaid Principal until the full amount has been paid. I will initially pay interest at a yearly rate of   8.750  %. This is my initial interest rate and is the rate for determining the interest I owe until it changes as provided below. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

● PayOption MTA Rider - No Intro Period
1E627-XX (03/06)(d)                Page 1 of 6





LOAN #: 152823338

The interest rate used to calculate the initial Minimum Payment described in Section 3 is 3.500 %. When I make a Minimum Payment which is based on an interest rate that is less than the rate of interest due, the unpaid interest is added to the Principal amount. This is known as "deferred interest" or "negative amortization."

### (B)  Interest Rate Change Dates

The interest rate I owe may change on the first day of the first scheduled monthly payment, and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C)  Index

On each Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding FOUR                          percentage point(s)     4.000  (this amount is the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than     9.950 % or lower than the Margin. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3.   PAYMENTS

#### (A)  Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the FIRST                    day of each month beginning on January, 2007            . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  DECEMBER 01, 2036      , I still owe amounts under this Note, I will pay those amounts

* PayOption MTA Rider - No Intro Period
1E627-XX (03/06)                         Page 2 of 6

LOAN #: 152823338

in full on that date, which is called the "Maturity Date." I will make my monthly payments at

P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Minimum Payment**

The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment. Each of my initial Minimum Payments until the first Payment Change Date will be in the amount of U.S. $ 7,229.62            . unless adjusted under Section 3(F). If the Minimum Payment is not sufficient to cover the amount of the interest due, negative amortization will occur.

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first            day of JANUARY, 2008            . and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The Minimum Payment is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) applies. the amount of my new monthly payment effective on a Payment Change Date will not increase by more than   7,500% of my prior monthly payment. This limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by multiplying the amount of my Minimum Payment due the month preceding the Payment Change Date by the number   1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount. my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate. and since the monthly payment is subject to the Payment Cap described in Section 3(D). my Minimum Payment could be insufficient to pay the interest portion of the monthly payment that would repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion. the Note Holder will subtract the amount of my monthly payment from the amount of the interest due and will add the difference to my unpaid Principal.

■ PayOption MTA Rider   No Intro Period
1E627-XX (03/06)                    Page 3 of 6

LOAN #: 152823338

Interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest due. the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Principal Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. On the date that my paying my Minimum Payment would cause me to exceed that limit. I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the then-current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter. I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date. the Note Holder may provide me with up to three (3) additional monthly payment options ("Payment Options") that are greater than the Minimum Payment. The Payment Options are calculated using the new interest rate in accordance with Section 2(D). The following Payment Options may be provided:

(i) **Interest Only Payment:** the amount that would pay only the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments based on the then-current interest rate.

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments at the then-current interest rate.

These Payment Options are only available if they are greater than the Minimum Payment. Because the interest rate may change monthly. the amounts of each of these Payment Options may also change monthly.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

● PayOption MTA Rider - No Intro Period
1E627-XX (03/06)          Page 4 of 6

LOAN #: 152823338

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender. To the extent permitted by Applicable Law, Lender may charge reasonable fees as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

* PayOption MTA Rider - No Intro Period
1E627-XX (03/06)                    Page 5 of 6

LOAN #: 152823338

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Monthly Adjustable Rate PayOption Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____  -Borrower
DONALD  OKADA

_____  -Borrower

_____  -Borrower

_____  -Borrower

● PayOption MTA Rider - No Intro Period
1E627-XX (03/06)                              Page 6 of 6

# EXHIBIT B

RECORDING REQUESTED BY
NEW CENTURY TITLE COMPANY

Recording Requested By:
S. GLASS

.

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ZINNIA MADLANGBAYAN

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   **63.00**

**2006000781338 04:30pm 11/17/06**
108 73 D11 A36 18

0.00 0.00 0.00 0.00 51.00 0.00 0.00 0.00

9861986

----------- |Space Above This Line For Recording Data| -----------

10394                     00015007430011006
[Escrow/Closing #]              [Doc ID #]

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MIN1001337-0001803650-2

This Deed of Trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 15th                   day of NOVEMBER, 2006    . between
DONALD OKADA, A SINGLE MAN                                                                         .

whose address is,
47 SILVERPINE, NEWPORT BEACH, CA 92657
herein called "Trustor."
RECON TRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
herein called "Trustee." and  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.. ("MERS")
a Delaware corporation with an address of P.O. Box 2026. Flint, MI 48501-2026. tel. (888) 679-MERS.
**MERS is the "Beneficiary" under this Deed of Trust** and is acting solely as a nominee for
Countrywide Bank, N.A.

("Lender" or "you") and its successors and assigns. with an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314                                                    .
Trustor irrevocably grants. transfers and assigns to Trustee. in trust and with power of sale. all of the real
property in the City or Town of NEWPORT BEACH                                       . County of
ORANGE                                           . State of California. having the street address of
316-316 1/2 IRIS AVENUE, NEWPORT BEACH, CA 92625

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)(d/i)                          Page 1 of 10





DOC ID #: 00015007430011006

and more specifically described as:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 052-092-07                                    together  with  all  improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to
the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and
gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the
property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part
of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the
leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property."

   TRUSTOR UNDERSTANDS and agrees that MERS is a separate corporation acting solely as nominee
for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by Trustor
in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and
Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not
limited to, the right to foreclose and sell the Property, and to take any action required of Lender including,
but not limited to, releasing or canceling this Deed of Trust.

1.     THIS DEED OF TRUST SECURES:

       a.     All of the obligations of Trustor in favor of Lender or order under the terms of a revolving
       credit agreement dated NOVEMBER 15, 2006       , herein called Agreement. The Agreement
       provides, among other things, for the payment of all sums advanced by Lender from time to time
       pursuant to the Agreement and for the payment of interest. The maximum principal obligation
       under the Agreement to be secured by this Deed of Trust at any one time is
       TWO HUNDRED THIRTY THOUSAND and 00/100
       Dollars ($ 230,000.00      ) unless Lender, with Trustor's written consent, hereafter
       increases this amount. Advances made by Lender to protect the security of this Deed of Trust or to
       preserve the Property shall not be subject to the limitation of the preceding sentence.

       The security of this Deed of Trust shall not be affected by the extension, renewal or modification
       from time to time of the obligations, instruments or agreements described above.

       b.     Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
       direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in
       interest to Trustor) whether created directly or acquired by assignment if the document evidencing
       such obligation or liability or any other writing signed by Trustor (or any successor in interest to
       Trustor) specifically provides that said obligation or liability is secured by this Deed of Trust.

DOC ID #: 00015007430011006

c.   Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d.   Payment of all sums to be expended by the Lender or Trustee pursuant to the terms hereof.

2.   TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a.   To keep the Property in good condition and repair; not to remove or demolish any building or improvement thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b.   To provide, maintain and deliver to Lender fire and other insurance on the Property satisfactory to and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon indebtedness secured hereby and in such order as Lender may determine, or at option of Lender, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice.

c.   To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender or Trustee may appear, and in any suit brought by Lender to foreclose this Deed of Trust. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

d.   To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this trust.

e.   That should Trustor fail to make any payment or do any act as herein provided, then Lender or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)   Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Lender or Trustee being authorized to enter upon the Property for such purposes.

(2)   Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Lender or Trustee.

DOC ID #: 00015007430011006

(3)   Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)   In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.      To pay immediately and without demand all sums so expended by Lender or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Lender, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.      To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Lender but not to exceed the maximum allowed by law at the time the statement is demanded.

3.     IT IS FURTHER AGREED THAT:

a.      Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.      By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Lender shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Lender may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.      Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this Deed of Trust on the remainder of the Property for the full amount of any indebtedness unpaid, Lender and Trustee are respectively empowered as follows:

(1)   Lender may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including Deeds of Trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness.

(2)   Trustee may, at any time, and from time to time, upon the written request of Lender (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                                    Page 4 of 10

DOC ID #: 00015007430011006

d.  Upon (a) written request of Lender or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

e.  Trustor hereby gives to and confers upon Lender the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Lender; provided, however, that Lender hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1). above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, planting or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Lender for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Lender's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.  Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Lender may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Lender.

DOC ID #: 00015007430011006

g.    Waiver of a right granted to Lender hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Lender may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Lender of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Lender or Trustee hereunder.

h.    At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Lender, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Lender; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Lender shall elect to bring suit to foreclose this Deed of Trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Lender shall be entitled to reasonable attorney's fees and litigation costs.

i.    Lender, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Lender and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Lender hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new trustee.

j.    This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Lender herein. In this Deed of Trust, whenever the context so requires, the singular number includes the plural.

DOC ID #: 00015007430011006

k.    Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Lender or Trustee shall be a party unless brought by Trustee.

l.    If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Lender, at its address designated on the first page of this Deed of Trust; (b) if this Deed of Trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Lender under the Agreement, whether before or after the Property is transferred, shall be secured under this Deed of Trust as if no transfer had occurred except for credit extended by Lender more than five days after it has received the written notices required by this paragraph.

m.    The pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust is hereby waived to the full extent permitted by law.

4.    WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:
a.  As used in this Paragraph 4:

(1)  "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

(2) "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(l), respectively. The term is intended by Trustor and Lender to be interpreted in its most comprehensive and cumulative sense.

DOC ID #: 00015007430011006

b.     Trustor represents and warrants that except as disclosed to and acknowledged in writing by Lender before the date of this Deed of Trust:

(1)  No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)  Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)  Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.     Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.     Trustor agrees to permit, or cause any tenant of Trustor to permit, Lender to enter and inspect the Property at any reasonable time for purposes of determining, as Lender deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Lender may obtain affirmative injunctive relief therefor.

e.     Trustor agrees to indemnify and hold Lender and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Lender and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this Deed of Trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in this Deed of Trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this Deed of Trust has been paid and discharged, whether or not this Deed of Trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Lender or of a third party after Trustor's interest in the Property has terminated.

DOC ID #: 00015007430011006

f.    The provisions of this Paragraph 4 shall not be affected by the acquisition by Lender or its successors or assigns of any ownership or other interest in the Property beyond Lender's security interest in the Property created under this Deed of Trust, whether or not such acquisition is pursuant to the foreclosure of this Deed of Trust or a merger of the interest of the Lender or its successors and assigns in the Property.

5.    ADDITIONAL PROVISIONS:

a.    The execution of this Deed of Trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this Deed of Trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to the interest granted hereunder.

b.    The execution of this Deed of Trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Lender for any obligation described in Section 1., above. Any personal liability of such person to Lender shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this Deed of Trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to the interest granted hereunder.

DOC ID #: 00015007430011006

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth below.

By signing below, Trustor agrees to all the terms and conditions of this Deed of Trust.

Mailing Address For Notices

DONALD OKADA
47 SILVERPINE
NEWPORT BEACH, CA 92657

**State of California**
County of Orange
On November 15, 2006 . before me Kimberly Sue Church
, personally appeared

Donald Okada

. personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

KIMBERLY SUE CHURCH
Commission # 1414082
Notary Public - California
Orange County
My Comm. Expires Apr 29, 2007

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                    Page 10 of 10

GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY : *KIMBERLY SUE CHURCH*

COMMISSION NUMBER : *1414082*

DATE COMMISSION EXPIRES : *4-29-07*

COUNTY WHERE BOND IS FILED : *O.C.*

MANUFACTOR/VENDOR NUMBER : *NNA1*

PLACE OF EXECUTION : *O.C.*

DATE : *11-17-06*

SIGNATURE

**Order No. 9061981**

**Exhibit "A"**

Lot 18 in Block 236 of Corona Del Mar, in the City of Newport Beach, as shown on a Map thereof recorded in Book 3, Pages 41 and 42, Miscellaneous Maps, records of said Orange County, California

Prepared by: ZINNIA MADLANGBAYAN

**Countrywide Bank, N.A.**

Branch #: 0000245
1 PARK PLAZA
DATE:    11/15/2006     IRVINE, CA 92614
CASE #:               Phone: (949)474-3295
DOC ID #:  00015007430011006    Br Fax No.: (949)474-0246
BORROWER: DONALD OKADA
PROPERTY ADDRESS: 316-316 1/2 IRIS AVENUE
                     NEWPORT BEACH, CA 92625

### LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
- Legal Description Exhibit A
1C404-XX (04/03)(d)





DOC ID #: 00015007430011006

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this 15th    day of NOVEMBER, 2006    , and is incorporated into
and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security
Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to:
Countrywide Bank, N.A.

1199 North Fairfax St. Ste.500
Alexandria, VA 22314
("Lender") of the same date and covering the Property described in the Security Instrument and located at:
316-316 1/2 IRIS AVENUE
NEWPORT BEACH, CA 92625
**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A.  ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the
Property described in the Security Instrument, the following items are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials, appliances,
and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in
connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm
doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached

● HELOC - 1-4 Family Rider
1U443-XX (12/05)(d)                    Page 1 of 5





DOC ID #: 00015007430011006

floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.** **USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.** **SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.** **RENT LOSS INSURANCE.** If Borrower at any time does not occupy the Property, and rents the Property, Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by the Security Instrument.

**E.** **ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph E, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**F.** **ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender and Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agents. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

DOC ID #: 00015007430011006

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by the Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

Except in connection with a senior loan secured by the property as disclosed to Lender in writing prior to the date hereof, Borrower represents and warrants that Borrower has not executed any prior assignment of Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph. Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all of the sums secured by the Security Instrument are paid in full.

G.  **PROTECTION OF LENDER'S RIGHTS IN THE PROPERTY.** If Borrower fails to perform the covenants and agreements contained in this Security Agreement, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fee and entering on the Property to make repairs. Although Lender may take action under this paragraph, Lender does not have to do so. Any amounts disbursed by Lender under this paragraph shall become additional debts of Borrower secured by the Security Instrument.

● HELOC - 1-4 Family Rider
1U443-XX (12/05)                              Page 3 of 5

DOC ID #: 00015007430011006

**H.** **CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

DOC ID #: 00015007430011006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____

DONALD OKADA                                                      Borrower

_____

                                                                 Borrower

_____

                                                                 Borrower

_____

                                                                 Borrower

● HELOC - 1-4 Family Rider
1U443-XX (12/05)                        Page 5 of 5

# EXHIBIT C

Recording Requested By:
**Bank of America**
·Prepared By: **Diana DeAvila**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID#    **10115282333834407**
Property Address:
**316-316 1/2 Iris Ave**
**Newport Beach, CA 92625**
CA0-ADT 14214331        6/13/2011

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**

   12.00

2011000304326 3:58 pm 06/22/11

276 418 A32   2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

This space for Recorder's use

MIN #: 1001337-0001803649-4      MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA19, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA19** whose address is **101 BARCLAY ST - 4W, NEW YORK, NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed o Trust.

Original Lender:        **COUNTRYWIDE BANK, N.A.**

Original Borrower(s):     **DONALD OKADA, A SINGLE MAN**

Original Trustee:       **RECON TRUST COMPANY, N.A.**

Date of Deed of Trust:    **11/15/2006**

Original Loan Amount:    **$1,610,000.00**

Recorded in Orange County, CA on: **11/17/2006**, book N/A, page N/A and instrument number **2006000781337**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

_6/14/11_

                     **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

                     By: _____

                     **Christopher Herrera, Assistant Secretary**

State of **California**
County of **Ventura**

On __6-14-2011__ before me, **Norma Rojas**, Notary Public, personally appeared **Christopher Herrera**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public, Norma Rojas                              (Seal)
My Commission Expires: 2/14/2015

NORMA ROJAS
Commission # 1925662
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

attached: assignment of Deed of Trust
borrower: Donald Okada

# EXHIBIT D

# LANDSAFE TITLE

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||     **18.00**

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

**2011000384179 08:00am 08/05/11**

RECONTRUST COMPANY

65 404 N15 4

1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

Attn: Michael Legrand
TS No. 11-0065325
Title Order No. 11-0052594

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $184,128.46, as of 08/03/2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

TS No. 11-0065325

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

   To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA19, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA19
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

   If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

   Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 11/15/2006, executed by DONALD OKADA, A SINGLE MAN as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 11/17/2006, as Instrument No. 2006000781337 (or Book , Page ) of Official Records in the Office of the County Recorder of Orange County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,610,000.00. That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST  WHICH BECAME DUE ON 12/01/2010  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES.  IN ADDITION,  THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  12/01/2036 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 11-0065325

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: August 03, 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

AUG 0 3 2011

Authorized Signer

**MARTHA CASILLAS**

*Form nodorig_2011.3.0_03/2011*

Branch :LSN,User :1931   Comment:     Station Id :JZSA

Case 8:15-cv-00981-CJC-E  Document 11-1  Filed 06/25/15  Page 58 of 103  Page ID #:241



**Bank of America**
**Home Loans**

**Notice Date:**   July 22, 2011

| 11-0065325 |

Donald Okada
Po Box 3208
Huntington Beach, CA 92605

**Property Address:**
316-316 1/2 Iris Avenue
Newport Beach, CA 92625

## CALIFORNIA DECLARATION

I, Keli L Clarkston , MORTGAGE SERVICING SPECIALIST I   of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America Home Loans

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☐ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☒ The provisions of California Civil Code §2923.5 do not apply because Loan originated as a second home.


07-22-2011- Ft. Worth, Texas
Date and Place

Keli L Clarkston
Name of Signor

CA-DECLARATIONS 8638/9508 8/27/2008

# EXHIBIT E



**LANDSAFE TITLE**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 11-0065325
Title Order No. 11-0052594

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||||| **9.00**

**2011000571664** 08:00am 11/10/11

66 422 N34 1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

APN No. 052-092-07

**NOTICE OF TRUSTEE'S SALE**

Recording Requested By: DPS
On Behalf Of:  **- LS – SV "**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/15/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by DONALD OKADA, A SINGLE MAN, dated 11/15/2006 and recorded 11/17/2006, as Instrument No. 2006000781337, in Book , Page  of Official Records in the office of the County Recorder of ORANGE County, State of California, will sell on 12/01/2011 at 12:00 PM, At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana, CA 92701

at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 316-316 1/2 IRIS AVENUE, NEWPORT BEACH, CA 92625  The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,843,641.14. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

 In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of  Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: _____     **NOV 0 2 2011**

Sunita Narayanan,  Authorized Signer

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

*Form nos (07/10)*

# EXHIBIT F

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

**RECORDING REQUESTED BY:**

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

9.00

\* S R 0 0 0 6 3 9 4 7 9 6 \$ \*

**2013000698301 8:00 am 12/19/13**

37 406 N38 F13   1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

**WHEN RECORDED MAIL TO:**

DONALD OKADA
316-316 1/2 IRIS AVENUE
NEWPORT BEACH, CA 92625

TS No.  11-0065325

Title Order No.  11-0052594

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF RESCISSION OF DECLARATION OF DEFAULT
## AND DEMAND FOR SALE AND OF NOTICE OF DEFAULT AND ELECTION TO SELL

NOTICE IS HEREBY GIVEN: That RECONTRUST COMPANY, N.A., is acting as Trustee for the Beneficiary under a DEED OF TRUST dated 11/15/2006, executed by DONALD OKADA, A SINGLE MAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as Beneficiary, recorded 11/17/2006 as Instrument No. 2006000781337 in Book N/A, Page N/A, of Official Records in the Office of the Recorder of Orange County, California describing land therein as more fully described on the above referenced deed of trust.

Said obligations including one note for the sum of $1,610,000.00.

Whereas, the current beneficiary under that certain Deed of Trust hereinabove described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas notice was heretofore given of the breach of obligations for which said Deed of Trust is security, and of election to cause to be sold the property therein described; and Whereas a Notice of Default and Election to Sell was recorded on 08/05/2011 in the office of the Recorder of Orange County, California, Instrument No. 2011-00384179, in Book N/A, Page N/A, of Official Records.

NOW, THEREFORE, NOTICE IS HEREBY GIVEN that the current Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Default and Election to Sell; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default--past, present or future--under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Demand for Sale and Notice of Default and Election to Sell had not been made and given.

RECONTRUST COMPANY, N.A., AS TRUSTEE FOR THE BENEFICIARY

**DEC 1 7 2013**

Dated: December 17, 2013

By: _____

Juan Rodriguez   Assistant Vice President

*CARESCIND_2013.06.EP_06/2013*

# EXHIBIT G

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

18.00

*$R00073271Q2$*

2015000105792 3:11 pm 02/27/15
47 405 N15 F13   4
0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

.RECORDING REQUESTED BY:
National Default Servicing Corporation
**WHEN RECORDED MAIL TO:**
National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

NDSC File No. :   14-22021-SP-CA
Title Order No. :   140937258-CA-VOI

APN: 052-092-07

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
## IMPORTANT NOTICE

*ATTENTION RECORDER*: **THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY PURSUANT TO CIVIL CODE 2923.3**

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED**

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO**
**TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP**
**LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).**

**This amount is $624,131.81, as of 02/26/2015 and will increase until your account becomes current.**

   While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required by the Note and Deed of Trust or Mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

   Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the

**Page 1 of 3**

NDSC File No. :   14-22021-SP-CA

time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months

after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by the transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Select Portfolio Servicing, Inc.
c/o National Default Servicing Corporation
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020   Phone 602-264-6101   Sales Website: www.ndscorp.com/sales/

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.  Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

This is an attempt to collect a debt and any information obtained will be used for that purpose.

NOTICE IS HEREBY GIVEN THAT : NATIONAL DEFAULT SERVICING CORPORATION is either the original Trustee, the duly appointed substituted Trustee or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated 11/15/2006, executed by Donald Okada, a single man, as Trustor, to secure certain obligations in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Bank, N.A., its successors and assigns as beneficiary recorded 11/17/2006 as Instrument No. 2006000781337 (or Book, Page) of the Official Records of Orange County, CA.  Said obligations including ONE NOTE FOR THE ORIGINAL sum of $1,610,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of : FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON 12/01/2010 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEY'S FEES.

NDSC File No.:   14-22021-SP-CA

That by reason thereof, the present beneficiary under such Deed of Trust has executed and delivered to duly appointed Trustee a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.55 declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.55.

The Declaration pursuant to California Civil Code Section 2923.5(a) is attached.

Dated   :   _____4/2(o_____, 2015

National Default Servicing Corporation, as Trustee for Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2006-OA19, Mortgage Pass Through Certificates Series 2006-OA19, by Select Portfolio Servicing, Inc., as Servicer

By:  Nichole Alford, Trustee Sales Supervisor

3 of 3

**CALIFORNIA DECLARATION OF COMPLIANCE**
**(CAL.CIV.CODE § 2923.55(c))**

Loan Number:

Borrower Name:   DONALD OKADA

Address:   316 316 1/2 IRIS AVENUE, NEWPORT BEACH, CA  92625

Beneficiary:   Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of
the Alternative Loan Trust 2006-OA19, Mortgage Pass Through Certificates Series 2006-
OA19

The undersigned beneficiary or authorized agent for the beneficiary hereby represents and declares under the penalty of perjury
that:

1) [X]   On 06/30/2014 contact was made with the borrower to assess the borrower's financial situation and explore options for the
borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2).

2) [ ]   On _____ the due diligence efforts were satisfied. No contact was made with the borrower despite the due diligence of
beneficiary or their authorized agent pursuant to California Civil Code § 2923.55(f).

3) [ ]   The borrower has surrendered the secured property as evidenced by a letter confirming the surrender or by delivery of the keys to
the secured property to the beneficiary, their authorized agent or the trustee pursuant to California Civil Code §2920.5(c).

4) [ ]   The beneficiary or their authorized agent has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not
been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case pursuant to California Civil
Code §2920.5(c).

5) [ ]   The provisions of California Civil Code §2923.55 do not apply because the property is not owner occupied as defined by California
Civil Code §2924.15.

The undersigned instructs the trustee to proceed with non-judicial foreclosure proceedings and expressly authorizes the trustee
or their authorized agent to sign the notice of default containing the declaration re: contact required pursuant to California Civil
Code §2923.5.

Dated: _____ JAN 2 0 2015

By: _____

Select Portfolio Servicing, Inc. as authorized agent of Beneficiary

Ray Salazar
Document Control Officer

# EXHIBIT H

Rowel S. Manasan, Esq. (SBN 248724)
Manasan Law Group PC
433 W. Arrow Highway
Claremont, CA 91711

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**01/11/2013** at 02:06:17 PM
Clerk of the Superior Court
By Rochelle Lucey, Deputy Clerk

Attorney for Plaintiff Donald Okada

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

## CENTRAL JUSTICE CENTER

|  |  |
|---|---|
| DONALD OKADA an individual<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION; COUNTRYWIDE HOME LOANS, INC.; THE BANK OF NEW YORK, as trustee of the Alternative Loan Trust 2006-0A19; RECONTRUST COMPANY, N.A.; DOES 1-50;<br><br>Defendants. | Case No.   30-2013-00623493-CU-OR-CJC<br><br>**COMPLAINT FOR :**<br><br>1. VIOLATION OF CIVIL CODE §17200 UNFAIR BUSINESS PRACTICES<br>2. LACK OF AUTHORITY TO FORECLOSE<br>3. WRONGFUL FORECLOSURE<br>4. VIOLATION OF CIVIL CODE §2932.5<br>5. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING<br>6. NEGLIGENT MISREPRESENTATION<br><br>Judge William M. Monroe |

COMES NOW the Plaintiff, DONALD OKADA ("Plaintiff"), complaining of the Defendants, and each of them, as follows:

1

**COMPLAINT**

**INTRODUCTION**

1.     Plaintiff is a resident of the County of Orange, State of California and the lawful owner of a parcel of Real Property commonly known as 316-316 ½ Avenue, Newport Beach, CA 92625. ("SUBJECT PROPERTY" or the "HOME").

2.     Plaintiff brings this action brought by Plaintiff for declaratory relief; injunctive and equitable relief; and for compensatory, special, and general damages.

3.     Plaintiff disputes the title and ownership claims of the Defendants to the HOME. Defendants, BANK OF AMERICA, NATIONAL ASSOCIATION ("BANK OF AMERICA"), the mortgage servicer;   COUNTRYWIDE HOME LOANS, INC. ("COUNTRYWIDE HOME LOANS"), the sponsor of the securitized loan; THE BANK OF NEW YORK as trustee of the ALTERNATIVE LOAN TRUST 2006-0A19 ("TRUST"); RECONTRUST COMPANY, N.A., ("RECONTRUST"), the foreclosing agent of Defendant BANK OF AMERICA all allege to have an ownership interest in the SUBJECT PROPERTY. COUNTRYWIDE BANK, N.A. ("COUNTRYWIDE BANK), the original mortgage lender, was later acquired by Defendant BANK OF AMERICA.  Defendant BANK OF AMERICA is the successor in interest to COUNTRYWIDE BANK.

4.     COUNTRYWIDE BANK wrongfully contracted with Plaintiff when Plaintiff entered into a Mortgage Note and Deed of Trust with COUNTRYWIDE BANK.

5.     COUNTRYWIDE BANK and any subsequent Assignees do not have lawful ownership or a security interest in the SUBJECT PROPERTY.

6.     Plaintiff further alleges that Defendants cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the Plaintiff's original Mortgage Note and Deed of Trust, resulting in imperfect security interests and claims.

7.     None of the Defendants have perfected any claim of title or security interest in the SUBJECT PROPERTY.  Defendants cannot establish that the Deed of Trust secures the indebtedness.  Likewise, Defendants cannot establish that the Mortgage Note was legally or properly acquired.

8.     Plaintiff dispute the title and ownership claims of Defendants to the SUBJECT PROPERTY on the ground that the flawed securitization of Plaintiff's loan provides the basis for Defendants' lack of authority to foreclose.  Plaintiff alleges that Defendants' Pooling and Servicing Agreement ("PSA") disallows transfer of finance notes

and security instruments beyond the "Closing Date" of the securitized trust. Any transfers beyond the "Closing Date" are invalid and fraudulent. Thus, Defendants are precluded from foreclosing on the SUBJECT PROPERTY.

9.     An actual controversy has arisen and now exists between Plaintiff and Defendants. Plaintiff requests a judicial declaration of his rights to the SUBJECT PROPERTY and the corresponding Mortgage Note and Deed of Trust.

## NATURE OF THE ACTION

10.     Between 2000 and 2008 mortgage lenders and banks notoriously signed off on illegal mortgage loans which violated numerous consumer protection laws and defied common sense lending practices. These practices led to the sub-prime mortgage crisis and one of the largest economic recessions since the Great Depression.  Securitization, the process where mortgage notes were processed into Real Estate Mortgage Investment Conduits or (REMIC)s relieved mortgage lenders of the concern of insuring that homeowners truly could afford their loan.

11.     During this boom of home buying, prices for homes increased dramatically based on the relative ease in which homebuyers received loans from loan originators who bypassed federal and state law lending requirements.  In many cases, homebuyers provided sparse information and received loans way beyond their means.  Many of these homebuyers were induced to accept these loans by relying on representations by "real estate experts" (i.e. loan originators and bank representatives) that the price of real estate would continue to skyrocket. Homebuyers received adjustable rate and sub prime mortgages which dramatically increased their monthly mortgage payments 4 to 5 years after the origination of the loan; well beyond the statute of limitations of federal and state laws intended to protect homebuyers from lending abuses.  Many hapless homeowners were unaware of the downside to their loans and, in many cases, the significance of their adjustable rate mortgages. Millions of adjustable rate and sub-prime mortgages defaulted suggesting a national systemic problem with lending practices in the industry and contributed greatly to the "Great Recession."  Federal Reserve Chairman Benjamin Bernanke in his March 4, 2008 speech at the Independent Community Bankers of America Annual Convention stated, "more than one-fifth of the 3.6 million loans outstanding were seriously delinquent at the end of 2007."

**COMPLAINT**

12.    The securitization of mortgage notes between 2002 and 2007 provided the groundwork for the real estate market collapse.  Prior to securitization, banks insured homebuyers qualified for the funds used to purchase their homes.  The financial relationship was limited to the original lender and the homebuyer.  If the homebuyer defaulted, the bank stood to lose on the investment in the homebuyer and the home especially if the loan was monetarily valued less than the home.  Securitization, however, removed the risk from the originating lender and the bank by converting home loans into multiple securities with different characteristics of risk and return that would appeal to a wide spectrum of investors.  Credit default swaps, issued by institutions such as AIG, reduced risk for investors seeking a steady stream of income over time.

13.    Thus, securitization removed the risk of default for loan originators and banks, and in fact incentivized banks to permit high risks loans because they stood to make a profit on the selling of certificates as wells as obtain the opportunity to foreclose on the real property.  However, due to the large number of loan defaults and the subsequent collapse of the real estate market, the Federal Government took extraordinary measures in approving the Troubled Asset Relief Program ("TARP") which authorized the US Department of the Treasury to purchase troubled assets resulting from the mortgage defaults.

14.    As a result, millions of illegal sub-prime notes were quickly approved without concern for important legal formalities—namely, proof of proper assignments and actual authority to assign the note.  The ensuing confusion stemming from these haphazard and oftentimes fraudulent practices gives rise to the claims before this court.

15.    Plaintiff's claims arise from an unlawful contract between PLAINTIFF and Defendant BANK OF AMERICA's securitization of the Mortgage Note and Deed of Trust.  Plaintiff claims that Defendants lack authority to foreclose.  Plaintiff also claims that Defendants violated numerous debt collection laws.

16.    This action seeks relief on several grounds, including: (a) a judicial determination that the Mortgage Note and Deed of Trust are void; (b) questions rising as to the standing of the loan servicer to collect payments from Plaintiff; (c) recovery of damages against Defendants for demanding and accepting payments on the Mortgage Note when in fact they are not a holder in due course; (d) damages for the breach of the duty of good faith and fair dealings based upon the misrepresentations of the loan originator and loan servicer; and (e) restitution for losses incurred

1    due to the Defendants' unfair, deceptive and fraudulent business practices causing injury to

2    Plaintiff.

3        17.    Plaintiff also seeks redress from Defendants for damages, other injunctive relief

4    and cancellation of written instruments based upon:

5            a.    An invalid and unperfected security interest in Plaintiff's HOME

6    hereinafter described;

7            b.    An incomplete and ineffectual perfection of a security interest in

8    Plaintiff's HOME;

9            c.    Violations of California Business and Professions Code §17200 (Unfair

10   Business Practices).

### THE PARTIES

11       18.    Plaintiff is the lawful owner of the SUBJECT PROPERTY.

12       19.    Defendant BANK OF AMERICA, as purported successor in interest to

13   COUNTRYWIDE BANK is a U.S. financial corporation doing business in the county of Orange,

14   state of California. Defendant BANK OF AMERICA's principal place of business is at 150 N.

15   College St. NC1-028-17-06, Charlotte, NC 28255. Defendant BANK OF AMERICA's process

16   server is C T Corporation System located at 818 W. Seventh St., Los Angeles, CA 90017.

17   Plaintiff alleges that Defendant BANK OF AMERICA represents itself as the successor in

18   interest of the loan without providing proof of a proper assignment.

19       20.    Plaintiff is informed and believes, and thereon alleges that Defendant BANK OF

20   NEW YORK is a corporation established by the laws of New York and is a national financial

21   institution doing business in the state of California. Defendant BANK OF NEW YORK is the

22   purported trustee of the ALTERNATIVE LOAN TRUST 2006-0A19 ("TRUST"), which is a

23   securitized trust. Plaintiff alleges that this TRUST holds the ownership interest in the Mortgage

     Note.

24       21.    Plaintiff is informed and believes, and thereon alleges that Defendant

25   RECONTRUST is a wholly owned subsidiary of BANK OF AMERICA, doing business in the

26   county of Orange, state of California. Defendant RECONTRUST is the purported trustee

     designated to conduct a prospective trustee foreclosure sale on the HOME.

27       22.    Plaintiff is ignorant of the true names and capacities of the Defendants sued as

28   well as DOES 1 through 20, inclusive, and therefore sues these Defendants by such fictitious

names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

23. Each of the Defendants sued was an agent or employee of each of the remaining Defendants and was acting within the purpose and scope of such agency or employment.

## GENERAL ALLEGATIONS

24. On or about November 11, 2005 purchased the SUBJECT PROPERTY for $2,200,000.00.

25. On or about November 15, 2006, Plaintiff refinanced and executed a Mortgage Note with COUNTRYWIDE BANK in the amount of $1,610,000.00. Plaintiff signed an adjustable rate note. The significance of the adjustable rate note feature was not made clear to Plaintiff. The loan is a Negative Adjustatble Rate Mortgage where the payments were reconfigured every twelve months.

26. COUNTRYWIDE BANK was eventually bought out by Defendant BANK OF AMERICA.

27. Defendant BANK OF AMERICA would not consider a loan modification for Plaintiff; Plaintiff did not get past Defendant BANK OF AMERICA's preliminary screening process because Plaintiff has too many properties under water to qualify.

28. In October 2011, Plaintiff applied for a Short Sale.

29. The Trustee Sale was scheduled for December 1, 2011.

30. Defendant BANK OF AMERICA did not timely respond to Plaintiff's Short Sale application. In fact, Defendant BANK OF AMERICA denied Plaintiff's application for the Short Sale some time after the Trustee Sale date.

31. However, Plaintiff was aware of Defendant BANK OF AMERICA's tactic. Defendant BANK OF AMERICA had done the same thing to Plaintiff with regard to another property, *to wit*: Defendant BANK OF AMERICA filed to respond timely to Plaintiff's short sale application, and that property was sold at the trustee sale. Accordingly, Plaintiff was forewarned and was able to stop the Trustee Sale for the SUBJECT PROPERTY by other measures.

32. Subsequently, Plaintiff entered into another Short Sale but an attached Bankruptcy extended the sale until October 5, 2012.

33. The Bankruptcy was removed in August 2012, but was reopened in September

**COMPLAINT**

2012 and this stopped the Short Sale, where the SUBJECT PROPERTY remains today.

34.    The HELOC is serviced by Green Tree Servicing LLC ("Green Tree"). Green Tree approved a Short Sale amount, but they referenced and provided a copy of a Mortgage Note that is not valid as to the SUBJECT PROPERTY; the Mortgage Note provided by Green Tree is for the Carnation property ("Carnation Mortgage Note"). In fact, another party has claimed ownership of the Carnation Mortgage Note.

35.    In September 2012, Plaintiff contacted Green Tree via certified letter and telephone. In response, Green Tree called Plaintiff and said that they would provide the correct documentation to show that they were the proper party of the HELOC for the SUBJECT PROPERTY. However, Green Tree never provided Plaintiff with such documentation.

36.    Subsequently, Plaintiff sent a qualified written request and ran the securization audit.

37.    In all contacts and contracts with Defendants, Defendants described itself to Plaintiff as a legal lender. Plaintiff believed that this was the same traditional path of mortgage borrowing and lending that had existed for decades before.[1]

38.    However, unbeknownst to Plaintiff, Defendants' intent was not to follow this traditional path, but rather to trade merely Plaintiff's Mortgage Note as a negotiable instrument into the world of high finance and Wall Street trading.

39.    Plaintiff was not aware that Defendants could and would transfer the Mortgage Note.

40.    Plaintiff was also unaware that Defendants intended to sell Plaintiff's Mortgage Note *separately* from his Deed of Trust in violation of the very terms of the documents he had just signed. Nowhere in the Deed of Trust did Plaintiff grant permission for the Mortgage Note and the Deed of Trust to be sold separately. Had these instruments been sold together as Plaintiff contemplated, and as the language of the Deed of Trust states, Plaintiff would have maintained his intended borrower/lender relationship with whomever purchased his mortgage.

41.    Instead, at the time of the signing of the Mortgage Note and the Deed of Trust,

---

[1] In a traditional mortgage lending relationship, a lender makes a loan, retains the loan in its portfolio, and services the loan itself. The lender sends out monthly billing statements and collects the payments. If the loan defaults, the lender will address the default with the goal of maximizing the loan's net present value...." Levitin and Twomey, Mortgage Servicing, 28 Yale J. on Reg. 1, 11 (2011).

Plaintiff was unaware that Defendants intended to sell Plaintiff's Mortgage Note separately from the Deed of Trust, not to another lender, but rather into a "securitized" pool of debt obligations.[2]

42.     Despite the already distorted incentives as mentioned previously, Defendants' efforts to streamline the securitization and foreclosure process provide the ground for this complaint.   Plaintiff, based on information and belief alleges that Defendants violated the express terms of the PSA thus rendering any subsequent assignments to the TRUST invalid. Therefore, the Trustee of the TRUST and any agents on behalf of the TRUST lack the authority to foreclose on the SUBJECT PROPERTY.

43.     During the securitization process the Mortgage Note was effectively split from the Deed of Trust.   In Carpenter v. Longan (1872) 16 Wall. 271,83 U.S. 271, 274, 21 L.Ed. 313 (1872), the U.S. Supreme Court stated "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while assignment of the latter alone is a nullity." Plaintiff on information and belief, alleges that the separation of the Mortgage Note and the Deed of Trust took place sometime between November 16, 2006, the signing of the Mortgage Note and November 30, 2006, which represents the Closing Date of the TRUST.

44.     The Mortgage Note was effectively sold from COUNTRYWIDE BANK, the original lender to Defendant COUNTRYWIDE HOME LOANS, which purchased loans from several different loan originators and formed pools of these loans.   These loans were then deposited with CWALT, INC, the Depositor, whose role is to create the issuing entity that will hold the pool of loans and issue certificates that are then given back to CWALT, INC.  In the instant case, the TRUST was created to issue these certificates. (See Exhibit A Page 32 of the Securitization Report by Michael Carrigan).  These certificates were then underwritten and sold by Defendant COUNTRYWIDE HOME LOANS to investors who offered proceeds to pay for

---

[2] Securitization is the process whereby Mortgage Notes are turned into securities or bonds and sold to investors by Wall Street and other firms. Securitization usually involves the "pooling" of hundreds or thousands of notes, and the sale of many thousands of shares.  The purpose is to provide a supply of money to lenders for originating loans, and to provide safe investments to bond holders. The procedure for selling the loans creates a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit Act are observed, giving the issuing entities and the lenders remote protection from either entity going into bankruptcy. In order to achieve this result, each mortgage note must pass through two "True Sales" of the loans, in which loans were sold and transferred to different parties to the securitization.

the certificates.  BANK OF NEW YORK, as trustee of the TRUST, allegedly represents the investors' interests, calculates cash flows and remits revenues to the investors.  Countrywide Home Loans Servicing LP acted as the Master Servicer of the Mortgage Note and collected funds and performed duties under the TRUST's PSA.

45.    The PSA is the governing document that dictates the securitization and selling of these certificates.  The PSA is written to effectuate two main goals: The first goal is to create bankruptcy remoteness from the originator; The second goal is to create a Real Estate Mortgage Investment Conduit ("REMIC") which does not get taxed when the TRUST collects money from the borrowers.[3]  REMICs are subject to a 100% tax on net income derived from non-permitted assets, **including** mortgage notes acquired after the start up date in the PSA.

46.    Simply stating that the REMIC owns the interest in the Mortgage Note is not enough.  Article II, Section 2.01 of the PSA requires physical transfer of the notes within 30 days after the Closing Date.[4]  If the interest in the property is not assigned within the Closing Date, then the income should be taxed at 100%.  Furthermore, the governing law of the TRUST is the state of New York.  Under New York trust law, any transfer that violates the language of the trust is void.[5]  Thus, any transfer of a property interest taking place after 30 days of the TRUST Closing Date is void.

47.    Plaintiff, based on information and belief, alleges that Defendants do not have authority to foreclose based on the Mortgage Note and Deed of Trust.  The Assignment of the Deed of Trust was recorded on June 22, 2011, almost **5 years after the Closing Date of the TRUST,** in the Official Records, Orange County as instrument number 304326 from COUNTRYWIDE BANK to BANK OF NEW YORK, as Trustee for TRUST, and not to the TRUST.  Christopher Herrera, signed as "Assistant Secretary" of Mortgage Electronic Registration Systems, Inc. "for value received" signed the document.  Plaintiff, based on information and belief, identifies Chrisopher Herrera as an employee of Defendant BANK OF

---

[3] IRC §860(D); 26 U.S.C.A. § (G)(a)(3)(A).

[4]  http://www.sec.gov/Archives/edgar/data/1361491/000114420406019954/v042733_ex4-1.htm

[5]  (See New York Estates, Powers and Trust Law § 7-2.4 "A trustee's act that is contrary to the trust agreement is void " and  See (NY Estates, Powers and Trust Law § 7-1.18).  "Unless an asset is transferred into a lifetime trust, the asset does not become trust property."

**COMPLAINT**

AMERICA.[6] Thus, if the agent for Defendant BANK OF AMERICA is also an agent for MERS, the transfer is **not for value received** and such document may be considered null and void.

48. Paragraph 1 of the Mortgage Note states in pertinent part: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and **who is entitled to receive payments under this Note is called the "Note Holder."**[7] California Commercial Code § 3301 states that a "Person entitled to enforce an instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder. Taken together, Plaintiff's Mortgage Note reserves enforcement of the instrument either to the Lender or the party entitled to receive payments.

49. Paragraph 7 of the Mortgage Note stipulates that **only the Note Holder can send out a notice of default.**[8]

50. Simply put, the Note Holder (defined as the party entitled to receive payments since the Lender no longer owns the Mortgage Note) is the only party that can execute a Notice of Default. Accordingly, the only party in the chain of Securitization that can enforce the Mortgage Note are the investors who purchased the certificates of the TRUST, because the PSA, (designed specifically to conform to IRC §860(D); 26 U.S.C.A. § (G)(a)(3)(A)) generates income when the "Investors," and **not the Trustee,** receive money payments made by Plainitff and parties similarly situated. Thus, Defendant BANK OF NEW YORK cannot, as Trustee receive payments from Plaintiff, be the true Note Holders; Defendant BANK OF NEW YORK merely acts as a conduit for the benefit of the true Note Holders, "the investors." Therefore, the party entitled to enforce both the **Mortgage Note and the Deed of Trust** are the investors who purchased the certificates of the TRUST.

51. Plaintiff insists he does not seek a "house free and clear" as the banking industry would have the Court believe. Instead, Plaintiff seeks that the true party, the Investors of the TRUST step in and claim their right to foreclose on both the Mortgage Note and Deed of Trust. Plaintiff requests a declaratory judgment stating that the current Defendants cannot validly

---

[6] See Exhibit A (Property Securitization Analysis Report Prepared by Michael Carrigan p.22)

[7] See Exhibit B (Adjustable Rate Note)

[8] See Exhibit B (Adjustable Rate Note Paragraph 7)

**COMPLAINT**

foreclose on the SUBJECT PROPERTY.

52.     Plainitff further alleges that the identity of the investors with the right to receive payment cannot be identified by both Defendants and Plaintiffs. Based on the Securitization Analysis Report,[9] Plaintiff's loan was found in all 21 classes of the TRUST. These classes represent the sections that the TRUST are divided into.

53.     16 out of the 21 classes were in fact **"completely paid."** This suggests, that even the investors of the Mortgage Note are not the clear cut holders of the "right to payment." If 16 out of 21 classes have been fully paid, and the outstanding balance far exceeds the original amount of the Mortgage Note, then the true parties with the "right to payment" are the parties that indemnified the original investors. Plaintiff therefore seeks declaratory relief that the current Defendants cannot validly foreclose on the SUBJECT PROPERTY.

54.     Plaintiff, based on information and belief, alleges that the Mortgage Note was securitized and none of the parties to the securitization transaction, or any of the Defendants in this case, hold a perfected and secured claim in the SUBJECT PROPERTY. Plaintiff alleges that all Defendants herein are thereby estopped and precluded from asserting an unsecured claim against Plaintiff or the SUBJECT PROPERTY.

55.     If the court should find the Mortgage Note and Deed of Trust valid, this lawsuit seeks to reform the Mortgage Note agreements based on a lack of a mutual assent by the parties at contract formation. Plaintiff requests this Court to restore Plaintiff's economic relationship with the true lender, or the current true owner of the Mortgage Note. Plaintiff intends to have a traditional borrower-lender relationship that was intended in the original bargain

56.     It was the conduct of Defendants, and each of them, in failing to properly handle Plaintiff's Mortgage Note that created their own lack of interest in the Mortgage Note, Deeds of Trust and the SUBJECT PROPERTY. It is as a proximate result of the Defendants' misconduct that the borrower/lender relationship has been terminated.

57.     As a direct and proximate result of the Defendants' actions, and each of them, none of the named Defendants is the proper party to foreclose on Plaintiff's residence and they have effectively stripped enforceability of the Deed of Trust and currently have no enforceable legal interest in Plaintiff's Mortgage Note as it was never properly transferred to the trust.

---

[9] See Exhibit A.

**COMPLAINT**

## FIRST CAUSE OF ACTION

### FOR UNFAIR BUSINESS PRACTICES IN VIOLATION OF
### BUSINESS AND PROFESSIONS CODE 17200, et seq
### (Against All Defendants)

58.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

59.     Plaintiff bring this action as a private attorney general acting on their own behalf, pursuant to California *Business and Professions Code* section 17200, *et seq.*, referred to as the Unfair Competition Law (the "Unfair Competition Law" or "UCL"). Plaintiff is acting in this capacity to remedy the ongoing unlawful, unfair and fraudulent business practices alleged herein, and to seek injunctive relief and restitution. The omissions of Defendants affect trade and commerce as those terms are defined under the UCL.

60.     Plaintiff has personally suffered an injury in fact and has been damaged as a result of the unfair competition listed herein.

61.     Beginning on the dates indicated, and at all times relevant herein, Defendants, and each of them, have committed acts of unfair competition proscribed by the UCL including the practices alleged herein against Plaintiff.

62.     Defendants made one or more misrepresentations and failed to make accurate representations and/or failed to provide material information about the transactions set forth above.

63.     The business acts and practices of these Defendants, as hereinabove alleged, constitute "unlawful" business practices under UCL in that, for the reasons set forth above, said acts and practices violate the provisions of California *Civil Code* section 2924, *et seq.*, the contract between the parties, and Defendants' fiduciary duties.

64.     The business acts and practices of these Defendants, as hereinabove alleged, constitute "unfair" business practices under UCL in that said acts and practices offend public policy and are substantially injurious to Plaintiff and all consumers. Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiff and other consumers, and potential homeowners.

65.     The business acts and practices of Defendants, as hereinabove alleged, constitute

"fraudulent" business practices under UCL in that said acts and practices are likely to deceive the public and affect consumers' legal rights and obligations. Indeed, Defendants' acts, including but not limited to active deception, falsifying documents, failing to deliver material documents, and concealment, may preclude consumers from exercising legal rights to which they are entitled.

66.     The unlawful, unfair and fraudulent business acts and practices of Defendants described herein present a continuing threat to members of the General Public and to Plaintiff in that Defendants and the DOE Defendants are currently engaging in such acts and practices, and will persist and continue to do so unless and until an injunction is issued by this Court.

67.     Pursuant to California *Business and Professions Code* section 17203, Plaintiff seeks an order enjoining Defendants from engaging in the acts and practices as hereinabove alleged, and an order that Defendants provide appropriate restitution to Plaintiff.

68.     Plaintiff seeks recovery of attorney's fees, costs and expenses incurred in the filing and prosecuting of this action pursuant to the California *Code of Civil Procedure* section 1021.5 and any other applicable law.

## SECOND CAUSE OF ACTION

### FOR DECLARATORY RELIEF: LACK OF AUTHORITY TO FORECLOSE
### (Against All Defendants)

69.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70.     As to each of the Defendants, an actual controversy exists in which the parties must ascertain their rights, duties and right to title in the SUBJECT PROPERTY.

71.     The parties require a judicial determination to ascertain their rights and duties to the SUBJECT PROPERTY. Plaintiff contends the following:

a.  That Defendants are unable to prove their standing to bring a non-judicial foreclosure proceeding in that they are not a holder in due course of the note, they do not have legally executed assignments, they do not have possession of the underlying note, nor do they have knowledge as to the physical location of the original note;

b.  That the actions of Defendants, and each of them, have created a cloud on

---

13
**COMPLAINT**

the title of the Plaintiff's property and have damaged Plaintiff's enjoyment of the full value of the SUBJECT PROPERTY, Plaintiff's ability to convey clear title, and Plaintiff's ability to market an insurable title with respect to the SUBJECT PROPERTY;

c. That the sale, transfer and/or assignment of Plaintiff's Deed of Trust are null and void;

d. That Defendants have no right to demand or collect any payments from Plaintiff with respect to the extinguished Mortgage Note from and after the date such Mortgage Note was extinguished;

e. That Defendants have no right to demand or collect any payments from Plaintiff with respect to the paid Mortgage Note from and after the date the Mortgage Note was paid;

f. That Defendants must refund to Plaintiff with paid notes all sums paid to Defendants that were allegedly incurred from and after the date of payment, plus interest;

g. That neither Defendants, and each of them, nor anyone acting or purporting to act on their behalf or pursuant to rights they claim to have obtained from Defendants have any rights under the paid Mortgage Note;

h. That Defendants and any other persons claiming to own, control, or act on behalf of the owners or controllers of the beneficial interest(s) in Plaintiff's Mortgage Note have not established the validity of those claims, that the Mortgage Note is accordingly unenforceable by Defendants.

i. That Defendants are not lawful holders in due course of the Mortgage Note and Deed of Trust executed by Plaintiff, that Defendants, and each of them, have no right to foreclose on Plaintiff's Deed of Trust and Mortgage Note, and that their application of Civil Code section 2924 is unlawful;

j. That Defendants have engaged in acts of misconduct, wrongdoing, and committed unlawful acts in order to make it appear as if the assignment of the Mortgage Note and Deed of Trust were lawful and executed in accordance with Civil Code section 2932.5 and Commercial Code section 3302 et seq., although in fact such transactions caused the Mortgage Note to

be rendered as non-negotiable; and

k. That when Defendants assigned the Mortgage Note, the power of sale was not conveyed because the assignment was not recorded, and the manner in which the assignment was physically applied to the body of the Mortgage Note rendered the Mortgage Note non-negotiable, lacking the power of sale, the (trustee) Defendant BANK OF NEW YORK cannot lawfully proceed with a foreclosure sale and any action by them, or on their behalf, would be void ab initio.

72.     Whereas Defendants, and each of them, dispute these contentions and contend that irrespective of the fact that they do not own this security and cannot produce the original Mortgage Note and chain of title, that they are following the requirements of Civil Code section 2924 and that they have a right to foreclose.

73.     Plaintiff requests an immediate judicial declaration of these rights, responsibilities and obligations. Such declarations are necessary and appropriate at this time. Plaintiff has a unique interest in the SUBJECT PROPERTY.

74.     Plaintiff is entitled to recover reasonable attorney's fees and costs incurred in prosecuting this action pursuant to California Code of Civil Procedure § 1021.5.

## THIRD CAUSE OF ACTION

### WRONGFUL FORECLOSURE

#### (Against All Defendants)

75.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76.     Plaintiff alleges that the non-judicial foreclosure proceedings conducted to date by Defendant have not complied with Civil Code section 2924, et seq.

77.     Plaintiff disputes the validity of the Notice of Default filed in this proceeding.

78.     These acts of Defendants, and each of them, failed to comply with the basic requirements of the Notice of Default provisions of California Civil Code section 2924, et seq. The violation invalidates Defendants' right to enforce the Deed of Trust. Plaintiff seeks to enjoin Defendants from proceeding with a non-judicial foreclosure based on the documents recorded to date.

79.    Furthermore, as mentioned above, Defendants are not the right parties to execute the Notice of Default. The Note Holder (defined as the party entitled to receive payments since the Lender no longer owns the Mortgage Note) is the only party that can execute a Notice of Default. Accordingly, the only party in the chain of Securitization that can enforce the Mortgae Note are the investors who purchased the certificates of the TRUST, because the PSA, (designed specifically to conform to IRC §860(D); 26 U.S.C.A. § (G)(a)(3)(A)) generates income when the "Investors," and not the Trustee, receive money payments made by Plainitff and parties similarly situated.

80.    As a direct and proximate result of Defendants' conduct, Plaintiff has been injured in an amount not presently known, but in an amount within the jurisdiction of this Court.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2932.5
### (Against All Defendants)

81.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82.    California Civil Code  section 2932 provides: Where a power to sell real property is given to a mortgagee, or other encumbrance, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assigned if the assignment is duly acknowledged and recorded.

83.    Plaintiff is informed and believes, and thereon alleges, that Civil Code section 2932 requires the recordation of an assignment of the beneficial interest in a deed of trust prior to foreclosure. Defendants, and each of them, cannot show valid and recorded assignments.

84.    As a proximate result of Defendants' action, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

## FIFTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against All Defendants)

85.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

COMPLAINT

though fully set forth herein.

86.     The covenant of good faith and fair dealing obligated the Defendants to perform the terms and conditions of the contract fairly and in good faith and to refrain from doing any act that would prevent or impede Plaintiff's ability to perform the conditions of the contract, or any act that would deprive Plaintiff of the benefits of the contract. The State of California incorporates into each contract an implied covenant of good faith and fair dealing.

87.     Plaintiff had entered a mortgage contract with Defendants.  During performance of the contract terms, Defendant through its advertising and marketing invited customers like Plaintiff to contact them and seek help should they encounter any financial hardship.  Plaintiff did in fact encounter a significant short-term financial hardship and contacted Defendant to seek assistance in the form of a mortgage modification or other relief.

88.     In all contacts and contracts with Defendants, Defendants described itself to Plaintiff as a lender.  Plaintiff believed that this was the same traditional path of mortgage borrowing and lending that had existed for decades before.[10]

89.     However, unbeknownst to Plaintiff, Defendants' intent was not to follow this traditional path, but rather to trade merely Plaintiff's Mortgage Note as a negotiable instrument into the world of high finance and Wall Street trading.

90.     Plaintiff was not aware that the Lender could transfer the Mortgage Note, but acknowlegdes that the written Mortgage Note allows the Lender to transfer the Mortgage Note.

91.     Plaintiff was also unaware that Defendants intended to sell Plaintiff's Mortgage Note separately from his Deed of Trust in violation of the very terms of the documents she had just signed. Nowhere in the Deed of Trust did Plaintiff grant permission for the Mortgage Note and the Deed of Trust to be sold separately. Had these instruments been sold together as Plaintiff contemplated, and as the language of the Deed of Trust states, Plaintiff would have maintained his intended borrower/lender relationship with whomever purchased his mortgage.

92.     Instead, at the time of the signing of the Mortgage Note and the Deed of Trust, Plaintiff was unaware that Defendants intended to sell Plaintiff's Mortgage Note separately

---

[10] In a traditional mortgage lending relationship, a lender makes a loan, retains the loan in its portfolio, and services the loan itself.  The lender sends out monthly billing statements and collects the payments. If the loan defaults, the lender will address the default with the goal of maximizing the loan's net present value...." Levitin and Twomey, <u>Mortgage Servicing</u>, 28 Yale J. on Reg. 1, 11 (2011).

**COMPLAINT**

from the Deed of Trust, not to another lender, but rather into a "securitized" pool of debt obligations.[11]

93.     Plaintiff alleges that this loan was securitized, with the Mortgage Note not being properly transferred to the TRUST.

94.     Plaintiff further alleges that Defendant BANK OF NEW YORK, as Trustee, does not have a valid and enforceable claim against the SUBJECT PROPERTY, as it was not duly acquired by the TRUST, and that Defendants, lack independent authority to collect on Plaintiff's obligation.

95.     Plaintiff alleges that none of the parties to the securitization transaction, or any of the Defendants in this case, hold a perfected and secured claim in the SUBJECT PROPERTY. Plaintiff alleges that all Defendants are estopped and precluded from asserting an unsecured claim against Plaintiff or the SUBJECT PROPERTY.

96.     In the alternative, this lawsuit seeks to reform the Mortgage Note agreements based on a lack of a mutual assent by the parties. Plaintiff requests this Court to restore Plaintiff's economic relationship with the true lender, or the current true owner of the Mortgage Note. Plaintiff intended a traditional borrower-lender relationship that was sought in the original bargain.

97.     The   Defendants, and each of them, failed to properly handle Plaintiff's Mortgage Note that created their own lack of interest in the Mortgage Note, Deeds of Trust and the SUBJECT PROPERTY. Defendants' misconduct proximately resulted in terminating the borrower/lender relationship.

98.     Plaintiff alleges that the Mortgage Note was secured by the Deed of Trust. Plaintiff further alleges that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity. This entire process was understood by the Defendants but never contemplated nor considered by Plaintiff.

99.     As a result of Defendant's failure to act in good faith, and in the absence of fair dealing, Defendants have each caused damages and harm to Plaintiff in an amount to be proven at trial.

---

[11] Securitization is the process whereby Mortgage Notes are turned into securities or bonds and sold to investors by Wall Street and other firms. Securitization usually involves the "pooling" of hundreds or thousands of notes, and the sale of many thousands of shares.

## SIXTH CAUSE OF ACTION

### FOR NEGLIGENT MISREPRESENTATION

### (Against All Defendants)

100.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.    Plaintiff alleges that Defendants, through their agents and employees, made representations to Plaintiff that they knew or should have known were false, or had no reasonable grounds to believe were true.

102.    The false representations were made in an effort to induce Plaintiff into not paying the Mortgage Note, obtain alternative refinancing or loans, or reinstate Plaintiff's mortgage loan in order to collect additional loan servicing fees and costs.

103.    As a direct result of the above-mentioned misrepresentations, Plaintiff has been and continues to be damaged in an amount to be proven at trial, but no less than the jurisdictional amount.  Plaintiff will seek leave of Court to amend this Complaint once the full amount of Plaintiff's damages has been ascertained.

## PRAYER FOR RELIEF

104.    WHEREFORE Plaintiff, will ask for the following for each Cause of Action to be awarded:

### FOR THE FIRST CAUSE OF ACTION

1.    For an Order enjoining Defendants from continuing to violate the statutes alleged herein;

2.    For costs of suit incurred herein;

3.    For restitution damages in an amount according to proof at trial;

4.    For reasonable attorney's fees subject to proof and as available by contract or statute; and

5.    For such other and further relief as the court may deem just and proper;

### FOR THE SECOND CAUSE OF ACTION

1.    For an Order of the Court finding that the Defendants, and each of them:

a.    Are unable to prove their standing to bring a non-judicial foreclosure

proceeding;

b.    Are not a holder in due course of the note; do not have legally executed assignments; do not have possession of the underlying note, nor do they have knowledge as to the physical location of the original note;

c.    Through their actions, Defendants have created a cloud on the title of Plaintiff's property and have damaged Plaintiff's enjoyment of the full value of the SUBJECT PROPERTY, Plaintiff's ability to convey clear title, and Plaintiff's ability to market an insurable title with respect to the SUBJECT PROPERTY;

2.    For a refund to Plaintiff of all sums paid to Defendants that were incurred after the date of Defendant's securitization actions, plus interest;

3.    For special damages subject to proof at time of trial;

4.    For costs of suit incurred herein; and

5.    For such other and further relief as the court may deem just and proper.

**FOR THE THIRD CAUSE OF ACTION**

1.    For an Order enjoining Defendants from continuing with their present foreclosure activities with regard to Plaintiff's property;

2.    For costs of suit incurred herein;

3.    For restitution damages in an amount according to proof at trial;

4.    For reasonable attorney's fees subject to proof and as available by contract or statute; and

5.    For such other and further relief as the court may deem just and proper.

**FOR THE FOURTH CAUSES OF ACTION**

1.    For general damages subject to proof at time of trial;

2.    For special damages subject to proof at time of trial;

3.    For costs of suit incurred herein;

4.    For reasonable attorney's fees subject to proof at time of trial; and

5.    For such other and further relief as the court may deem just and proper.

**FOR THE FIFTH CAUSES OF ACTION**

1.    For general damages subject to proof at time of trial;

2.    For special damages subject to proof at time of trial;

COMPLAINT

3. For costs of suit incurred herein;

4. For reasonable attorney's fees subject to proof at time of trial; and

5. For such other and further relief as the court may deem just and proper.

**FOR THE SIXTH CAUSE OF ACTION**

1. For an Order enjoining Defendants from continuing to violate the statutes alleged herein;

2. For costs of suit incurred herein;

3. For restitution damages in an amount according to proof at trial;

4. For reasonable attorney's fees subject to proof and as available by contract or statute; and

5. For such other and further relief as the court may deem just and proper;


Dated: January 10, 2013                    MANASAN LAW GROUP, PC



                                           _____
                                           Rowel S. Manasan, Esq.
                                           Attorney for Donald Okada

**COMPLAINT**

# EXHIBIT I

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Rowel Manasan, Manasan Law Group, Professional Corporation<br>433 West Arrow Highway, Claremont, CA 91711<br>TELEPHONE NO: (909) 253-7744    FAX NO. *(Optional)*: (888) 959-3252<br>E-MAIL ADDRESS *(Optional)*: rowel@manasanlaw.com<br>ATTORNEY FOR *(Name)*: Donald Okada | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**03/25/2013** at 07:51:00 PM<br>Clerk of the Superior Court<br>By Patricia C Iwaniec, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive
MAILING ADDRESS: 700 Civic Center Drive
CITY AND ZIP CODE: Santa Ana, 92703
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Donald Okada

DEFENDANT/RESPONDENT: Bank of America, N.A., et al.

| **REQUEST FOR DISMISSAL** | CASE NUMBER: 30-2013-00623493-CU-OR |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) ☐ With prejudice    (2) ☑ Without prejudice
   b. (1) ☐ Complaint    (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name)*:                          on *(date)*:
      (4) ☐ Cross-complaint filed by *(name)*:                          on *(date)*:
      (5) ☑ Entire action of all parties and all causes of action
      (6) ☐ Other *(specify)*:*

2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☑ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: March 25, 2013

Rowel Manasan
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                          ► *(SIGNATURE)*

*If dismissal requested is of specified parties only or specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☑ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given. **
   Date:
                                                                     ►
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)                          *(SIGNATURE)*

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☒ Dismissal entered as requested on *(date)*: 03/25/2013

5. ☐ Dismissal entered on *(date)*:                          as to only *(name)*:

6. ☐ Dismissal not entered as requested for the following reasons *(specify)*:

7. a. ☐ Attorney or party without attorney notified on *(date)*:
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed    ☐ means to return conformed copy

Date: 03/25/2013                          Clerk, by  *Patricia C. Iwaniec*, Deputy
ALAN CARLSON, Clerk of the Court

Page 1 of 2

Form Adopted for Mandatory Use.
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

CIV-110

| | |
|---|---|
| PLAINTIFF/PETITIONER: Donald Okada | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Bank of America, N.A., et al. | 30-2013-00623493-CU-OR |

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

## Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name)*:

2. The person named in item 1 is *(check one below)*:
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one)*:   ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶

_____          _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)          (SIGNATURE)

# PROOF OF SERVICE

I, Maria Regina J. Lejano, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 433 West Arrow Highway, Claremont, CA 91711. I am readily familiar with the practices of Manasan Law Group, Professional Corporation, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On March 25, 2013, I served the within **REQUEST FOR DISMISSAL** on all interested parties in this action as follows:

[X]   by placing [ ] the orginal [X] a true copy thereof enclosed in a sealed envelope(s) address as follows:

| | |
|---|---|
| Jennifer Brady (SBN 233440)<br>Andres Orphanopoulos (SBN 282855)<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105-3659<br>**Attorney for Defendants Bank of America, N.A. et al.** | Phone: (415) 543-8700<br>Fax: (415) 391-8269 |

[X]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]   (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]   (BY FACSIMILE) The facisimile machine I used, with telephone no. (888) 959-3252, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[ ]   (BY OVERNIGHT EXPRESS – NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a packaged designated by Fedex with the delivery fees provided for.

[X]   (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 25, 2013, at Claremont, California.

_____
Maria Regina J. Lejano

-1-

# EXHIBIT J

Rowel S. Manasan, Esq. (SBN 248724)
Manasan Law Group PC
433 W. Arrow Highway
Claremont, CA 91711

Attorney for Plaintiff Donald Okada

Recorded in Official Records, Orange County
Renee Ramirez, Assistant Clerk Recorder

**12.00**

* $ R 0 0 0 5 5 0 9 4 3 2 $ *

**2013000026764 02:20pm 01/14/13**
66 401 N25 F13 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

## CENTRAL JUSTICE CENTER

|  |  |
|---|---|
| DONALD OKADA an individual<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, NATIONAL ASSOCIATION; COUNTRYWIDE HOME LOANS, INC.; THE BANK OF NEW YORK, as trustee of the Alternative Loan Trust 2006-0A19; RECONTRUST COMPANY, N.A.; DOES 1-50;<br><br>Defendants. | Case No. 30-2013-00623396-CU-OR-CJC<br><br>**NOTICE OF PENDENCY OF ACTION** |

    PLEASE TAKE NOTICE that this action was commenced in the above named court

by the above entitled Plaintiff against the above entitled Defendants, and is now pending.

    The Plaintiff allege a real property claim affecting real property located at **316-316**

**½ Iris Avenue, Newport Beach, CA 92625.**

The land referred to herein is situated in the City of Newport Beach, County of Orange, State of California and bears the legal description as follows:

Lot 18 of Block 236 of Corona del Mar, in the City of Newport Beach, County of Orange, State of California, as shown on a map thereof, recorded in Book 3, Pages 3, Pages 41 and 42, miscellaneous maps, records of said Orange County.

Dated: January 14, 2013

Respectfully Submitted,                    MANASAN LAW GROUP PC,

Rowel Manasan, Esq.
Attorney for Donald Okada

**NOTICE OF PENDENCY OF ACTION**

# EXHIBIT K

Recorded in Official Records of Orange County
Renee Ramirez, Assistant Clerk Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   12.00
* $ R 0 0 0 5 5 1 7 0 2 1 $ *

2013000032477 12:36pm 01/16/13
93 406 N25 F13 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

1 | Rowel S. Manasan, Esq. (SBN 248724)
Manasan Law Group PC
2 | 433 W. Arrow Highway
3 | Claremont, CA 91711

4

5 | Attorney for Plaintiff Donald Okada

6

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

## CENTRAL JUSTICE CENTER

|  |  |
|---|---|
| | Case No. 30-2013-00623493-CU-OR-CJC |
| DONALD OKADA an individual | |
| | **NOTICE OF PENDENCY OF ACTION** |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA, NATIONAL ASSOCIATION; COUNTRYWIDE HOME LOANS, INC.; THE BANK OF NEW YORK, as trustee of the Alternative Loan Trust 2006-0A19; RECONTRUST COMPANY, N.A.; DOES 1-50; | |
| Defendants. | |

PLEASE TAKE NOTICE that this action was commenced in the above named court by the above entitled Plaintiff against the above entitled Defendants, and is now pending.

The Plaintiff allege a real property claim affecting real property located at **316-316 ½ Iris Avenue, Newport Beach, CA 92625.**

1

**NOTICE OF PENDENCY OF ACTION**

The land referred to herein is situated in the City of Newport Beach, County of Orange, State of California and bears the legal description as follows:

Lot 18 of Block 236 of Corona del Mar, in the City of Newport Beach, County of Orange, State of California, as shown on a map thereof, recorded in Book 3, Pages 3, Pages 41 and 42, miscellaneous maps, records of said Orange County.

Dated: January 15, 2013

Respectfully Submitted,                    MANASAN LAW GROUP PC,


_____
Rowel Manasan, Esq.
Attorney for Donald Okada

2

**NOTICE OF PENDENCY OF ACTION**

# EXHIBIT L

1 | Rowel S. Manasan, Esq. (SBN 248724)
2 | Manasan Law Group PC
   | 433 W. Arrow Highway
3 | Claremont, CA 91711

4
5 | Attorney for Plaintiff Donald Okada

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**03/29/2013** at 04:16:00 PM
Clerk of the Superior Court
By Fidel Ibarra, Deputy Clerk

6
7 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
8 | **COUNTY OF ORANGE**
   | **CENTRAL JUSTICE CENTER**
9

10

11 | DONALD OKADA an individual

Case No. 30-2013-00623493-CU-OR-CJC

**NOTICE OF WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION**

12

13 |                          Plaintiff,
14 |        vs.

15 | BANK OF AMERICA, NATIONAL
16 | ASSOCIATION; COUNTRYWIDE HOME
   | LOANS, INC.; THE BANK OF NEW
17 | YORK, as trustee of the Alternative Loan
   | Trust 2006-0A19; RECONTRUST
18 | COMPANY, N.A.; DOES 1-50;

19 |                          Defendants.
20

21
22
23 | To: Bank of America, National Association; Countrywide Home Loans, Inc.; The Bank of
24 | New York; Recontrust Company, N.A. (collectively "Defendants"), and their attorneys
25 | Notice is given that Donald Okada, the plaintiff in the above-entitled action, withdraws the
26 | notice of pendency of the above-entitled action, recorded by plaintiff in the office of the
27 | County Recorder of Orange County, California on January 16, 2013, as Document Number
28 | 2013000032477. The action  affects title to specific real property located at **316-316 ½ Iris**

---

1

**NOTICE OF WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION**

**Avenue, Newport Beach, CA 92625**, which property is located in Orange County, California, and is described as follows:

Lot 18 of Block 236 of Corona del Mar, in the City of Newport Beach, County of Orange, State of California, as shown on a map thereof, recorded in Book 3, Pages 3, Pages 41 and 42, miscellaneous maps, records of said Orange County.

Dated: March 29, 2013                           MANASAN LAW GROUP,
                                                PROFESSIONAL CORPORATION


                                                _____
                                                Rowel Manasan
                                                Attorney for Donald Okada

NOTICE OF WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION

**PROOF OF SERVICE**

I, Maria Regina J. Lejano, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 433 West Arrow Highway, Claremont, CA 91711. I am readily familiar with the practices of Manasan Law Group, Professional Corporation, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On March 29, 2013, I served the within **NOTICE OF WITHDRAWAL OF NOTICE OF PENDENCY OF ACTION** on all interested parties in this action as follows:

[X]  by placing [ ] the orginal [X] a true copy thereof enclosed in a sealed envelope(s) address as follows:

| | |
|---|---|
| Jennifer Brady (SBN 233440)<br>Andres Orphanopoulos (SBN 282855)<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105-3659<br>**Attorney for Defendants Bank of America, N.A. et al.** | Phone: (415) 543-8700<br>Fax: (415) 391-8269 |

[X]  (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]  (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]  (BY FACSIMILE) The facismile machine I used, with telephone no. (888) 959-3252, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[ ]  (BY OVERNIGHT EXPRESS – NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a packaged designated by Fedex with the delivery fees provided for.

[X]  (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on March 29, 2013, at Claremont, California.

_____
Maria Regina J. Lejano

**PROOF OF SERVICE**