1  Rowel S. Manasan, Esq. (SBN 248724)
2  MANASAN LAW GROUP PC
3  21021 Trigger Lane
4  Diamond Bar, CA 91765
5  (909) 524-9995
6  rowel@manasanlaw.com
7
8  Attorney for Plaintiff DONALD OKADA
9
10
11              **UNITED STATES DISTRICT COURT**
12             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DONALD OKADA<br><br>                  Plaintiffs,<br><br>    vs.<br><br>BANK OF AMERICA, N.A.; SELECT PORTFOLIO SERVICING; NATIONAL DEFAUL SERVICING CORPORATION;  and DOES 1-50, I<br><br>              Defendants. | Case No. 8:15-CV-00981-CJC-E<br><br>**OPPOSITION TO DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:        August 3, 2015<br>Time:       1:30 PM<br>Place:      Courtroom 9B<br>Courtroom:  15<br><br>Honorable Cormac J. Carney |

13      Plaintiff Donald Okada ("Okada") respectfully submit the following

14  Memorandum of Points and Authorities in opposition to Defendants' Motion to Dismiss

15  Plaintiff's First Amended Complaint.

16

**TABLE OF CONTENTS**

1

2  **I. INTRODUCTION** 6

3  **II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

4      6

5

6  **III. LEGAL STANDARD** 9

7      A. <u>**Fed. R. Civ. P. 12(b)(6)**</u> 9

8      B. <u>**Judicial Notice**</u> 11

9  **IV LEGAL ARGUMENT** 11

10     A. <u>**Okada's claim for False Promise and Negligent Misrepresentation**</u>

11     <u>**adequately alleges, misrepresentation, scienter, reliance, and damages.**</u> 11

12

13

14         **1.  Okada pleads a plethora of details which ground Okada's False**

15         **Promise and Negligent Misrepresentation claims.** 12

16

17         **2. BANA completely mischaracterizes Okada's complaint as one wholly**

18         **lacking in detail or reason.** 14

19

20         **3.  As a matter of law, BANA owed Okada a duty of care in processing**

21         **his loan modification application.** 15

22

23         **4.  Okada's lost opportunity to obtain the NMSP satisfies the False**

24         **Promise and Negligent Misrepresentation damage requirement.** 17

25

26     **B.  Okada's complaint adequately alleges violations of California Civil Code**

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  **Sections 2923.6, 2924.10, and 2924.18.**                                    18

2

3  **C.  Plaintiff adequately alleges an actionable claim for violation of the UCL**

4  **against BANA.**                                                              19

5

6      **1.  Okada's complaint adequately alleges injury to satisfy the UCL's**

7      **standing requirement.**                                                  20

8

9      **2.  Okada establishes standing under the UCL by adequately pleading**

10     **"actionable conduct."**                                                  21

11

12 **CONCLUSION**                                                                  22

13                              **TABLE OF AUTHORITIES**

14                                     <u>Cases</u>

15 *Bell Atlantic Corp. v. Twombly,* 540 U.S. 544, 570 (2007) ................................ ….9

16 *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (2009) .................................................. 10

17 *Graybeal v. American Sav. & Loan Assoc.,* 59 F.R.D. 7, 21 (D.D.C. 1973) ......... 10

18 *Nymark v. Heart Fed. Sav. & Loan Ass'n*,  231 Cal. App. 3D 1089, 1098 (1991) .... 16

19 *Bowman v. Wells Fargo Home Mortg.*, 2014 Us.Dist Lexis 65806* (N.D Cal. May 13,

20 2014) ....................................................................................................................... 16

21 *Stephenson v. Argonaut Ins. Co.* 125 Cal App. 4Th 962, 974-975 (2004) ............ 17

22 *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 at 323 (Cal. 2011) ................... 20

23 *Segura v. Wells Fargo Bank*, 2014 U.S. Dist. LEXIS 143038, 2014 WL 4798890 .. 20

24 *Parks Sch. of Bus. v. Symington* 51 F.3d 1480, 1484 (9th Cir. 1995)........Footnote 2

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)..............................................................

2  ..............................................................................................Footnote 3

3  *Diaz v. International Longshore and Warehouse Union, Local 13,* 474 F.3d 1202, 1205

4  (9th Cir. 2007).......................................................................Footnote 4

5  *Foman v. Davis* 371 U.S. 178, 182 (1962)...............................................Footnote 5

6  *Intri-Plex Techs., Inc. v. Crest Group Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)......

7  ..............................................................................................Footnote 6

8  *Lazar v. Superior Court*, 12 Cal. 4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996)

9  ..............................................................................................Footnote 8

10  *In re Glen Fed. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994) ..........Footnote 9

11  *Samson v. One West Bank*, U.S. Dist. LEXIS  at *3 (N.D. Cal. July 28, 2011)........

12  ..............................................................................................Footnote 10

13  *Vessa v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)...Footnote 11

14  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)............Footnote 12

15  *Johnson v. Aurora Bank, F.S.B.*, 2015 U.S. Dist. LEXIS 36140 at 30. (N.D. Cal Mar. 23,

16  2015)......................................................................................Footnote 13

17  *Garcia v. Ocwen Loan Serv., LLC*, 2010 U.S. Dist. LEXIS 45375 at *3 (N.D. Cal. May

18  10, 2010).................................................................................Footnote 17

19  *Trant v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 98404, at *6-7 (S.D. Cal. July

20  12, 2012).................................................................................Footnote 17

21  *Ansanelli v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 32350 at *7 (N.D. Cal.

22  Sep. 11, 2013)..........................................................................Footnote 17

23  *Avila v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 100522, at *12-*14 (N.D. Cal. July

1   19, 2012).........................................................................................Footnote 17

2   *Chancellor v. OneWest Bank*, 2012 U.S. Dist. LEXIS 71992, *13-14 (N.D. Cal. May 22,

3   2012).........................................................................................Footnote 17

4   *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (Ca. 4Th 2003)..............

5   .........................................................................................Footnote19

6   *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061,

7   1072, (Ca. 4Th 2004)......................................................................Footnote 20

8   *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).........

9   .........................................................................................Footnote 21

10  *Saunders v. Superior Court*, 27 Cal. App. 4Th 832, 838-39, 33 Cal. Rptr. 2d 438 (Cal.

11  App. 1994).................................................................................Footnote 22

12  *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827, 135 Cal. Rptr. 2d 1, 69 P.3d 927 (Cal.

13  2003).......................................................................................Footnote 23

14  *Cruz v. Aurora Loan Servs., LLC* 2015 U.S. Dist. Lexis 58891, *28 (N.D. Cal. May 5,

15  2015).......................................................................................Footnote 24

16  Statutes

17  Cal. Civ. Code § 2923.7 ....................................................... 19

18  Cal. Bus. & Prof. Code § 17200.............................................. 19

19  Cal. Civil Code §§ 2923.6, 2924.10, 2924.18...................................... 21

20  Rules

21  Fed. Rule Civ. Proc. 12(b)(6) ............................................... 9

22  Fed. R. Civ. P. 15(a)....................................................... 10

23  Fed. R. Civ. P. 9(b) ....................................................... 11

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# I. INTRODUCTION

Plaintiff Okada opposes Defendant Bank of America, NA ("BANA" or "Defendant") attempt to dismiss Okada's Complaint ("Compl."). BANA contends that Plaintiff's complaint is not supported by sufficient facts despite the complaint's exhaustive references to dates, individual names, and representations made by numerous agents on behalf of all business Defendants named in the complaint. In short, BANA asserts that (1) Okada failed to state a claim upon which relief can be granted [Fed. Rule Civ. Proc. 12(b)(6)]; (2) the Complaint fails to adequately allege any misrepresentation, scienter, or damages and fails to allege BANA owes Okada a duty; (3) Okada fails to allege that Homeowners Bill of Rights Provisions were triggered because Okada did not submit a complete application; and (4) that Okada's Business and Profession's Code section 17200 ("UCL") claim fails because Okada lacks standing and does not allege injury or actionable conduct; and (4) the defects are such that they are incurable and the Complaint is incapable of amendment.

Despite BANA's misleading assertions, careful review of the case law and complaint's details reveal a misguided attempt by BANA to delay impending discovery and deny Okada a valuable principal reduction opportunity available to Okada through the NMSP.

# II. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On November 15, 2006, Okada obtained a $1,610,000.00 loan ("Loan") to refinance real property located at 316-316 ½ Iris Avenue, Newport Beach, CA 92625 ("Property"). The property is secured by a Deed of Trust identifying Okada as the borrower, Countrywide as the lender, ReconTrust Company, N.A. ("ReconTrust") as trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary under the Deed of Trust.

On August 5, 2011, ReconTrust recorded a Notice of Default ("NOD") listing

1   Okada's arrears as $184,128.46.  On November 10, 2011, ReconTrust, recorded a Notice

2   of Trustee's Sale ("NOTS") listing the total unpaid balance of $1,843,641.14.

3          On January 11, 2013, Okada filed a Complaint ("2013 Complaint") alleging

4   wrongful foreclosure actions against BANA, ReconTrust Countrywide Home Loans,

5   Inc., and the Bank of New York Mellon.

6          On or about March 2013, Plaintiff entered into settlement discussions concerning

7   the 2013 Complaint.  On March 7, 2013, BANA's counsel, Mr. Andres Orphanopolous

8   indicated to Okada that BANA determined that Okada qualified for a modification of his

9   loan under the National Mortgage Settlement Program ("NMSP"). Compl. ¶ 22 (See

10  Exhibit A).  On March 19, 2013, Mr. Orphanopolous assured Okada that BANA would

11  not foreclose provided that Plaintiff was being considered for a modification under the

12  NMSP.  (See Exhibit B).

13         Okada relied on Mr. Orphanopolous' representations on behalf of BANA  that

14  they would consider him for the NMSP modification and dismissed the lawsuit on

15  March 25, 2013.  Compl. ¶ 23.

16         On March 23 and 28, 2013, Okada submitted **all required documents** for the

17  NMSP to BANA.  Comp ¶ 24-26.  The submitted documents were filed well within the

18  March 31, 2013 deadline expressed in BANA's letter.  (See Exhibit A).

19         Inexplicably, on June 6, 2013, Okada received a letter dated May 24, 2013

20  indicating Okada withdrew his NMSP application on May 21, 2013.  (See Exhibit C).

21         On June 10, 2013, Okada delivered a letter via certified mail to BANA indicating

22  to BANA that he did not withdraw his NMSP application and requested that his

23  application be reinstated.  Compl. ¶ 31.

24         On June 17, 2013, Okada spoke with a BANA representative that he never

25  withdrew his application and that he submitted all required document under the NMSP.

26  The unnamed representative explained that she did not understand why his application

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    was removed from consideration.  Compl. ¶ 32.

2           On June 25, 2013, Okada resubmitted his application with additional documents

3    in order to update the application as required by the NMSP application. Comp.  ¶ 33.

4    The purpose of the resubmission application was to insure its completeness.

5           On June 27, 2013 Okada spoke with Ms. Winona Petersen, BANA's

6    representative.  Ms. Petersen indicated to Plaintiff that additional documents were

7    requested in order to complete the NMSP application.  Okada sent the requested

8    documents that same day.  Compl. ¶ 34.

9           On July 9, 2013, Okada spoke with Ms. Carol Bedford BANA's representative.

10   Ms. Bedford asked for additional documents.  Okada provided those additional

11   documents that same day by mail and by fax on July 11, 2013.  Compl. ¶ 35.

12          On July 17 2013, Okada sent additional documents explaining an issue with his

13   pay stubs.  Compl. ¶ 36.

14          On July 22, 2013, Okada spoke with Ms. Nikki McRae, BANA's representative, in

15   order to verify receipt of Okada's documents.  Ms. McRae indicated that she would

16   follow up with Okada on July 31, 2013.  Compl. ¶ 38.

17          On July 30, 2013, Okada spoke with Ms. McRae who indicated to Okada that

18   BANA needed a utility bill and that this would be the last document required for

19   underwriting the NMSP and Okada would be provided with a decision in 2 weeks.

20   Compl. ¶ 39.  Okada did submit the final utility bill that same day.[1]

21          On August 20, 2013, Okada spoke with Krista, BANA's representative, and Krista

22   informed Okada that the account had been transferred to Defendant Select Portfolio

---

1

      It's important to note that the complaint fails to mention that it was submitted
that day.  But Plaintiff requests leave of court to file an amended complaint if necessary
to allege that Plaintiff submitted the final utility bill on July 30, 2013.  However, to the
extent that it can be surmised on the face of the complaint that a completed application
was filed, Okada requests a denial of BANA's motion to dismiss.

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   Servicing ("SPS").  Compl. ¶ 41.

2     Despite Okada's requests to be reviewed under the NMSP after submission of a

3   **complete application**, both SPS and BANA fail to review Okada under the NMSP.

4     On January 1, 2015, the NMSP expired.  Okada cannot qualify under the NMSP

5   program because BANA transferred servicing of Okada's loan to SPS and SPS

6   consistently delayed reviewing Okada's NMSP application.  Compl. ¶ 55.

7     On February 27, 2015, National Default Servicing Corporation records a notice of

8   default on Okada's home.  Compl. ¶ 56.

9     On May 11, 2015, Plaintiff filed the instant complaint alleging six causes of action

10   against BANA, SPS, and National Default Servicing Corporation ("NDSC"), for: (1)

11   False Promise  (2) Negligent Misrepresentation (3) Civil Code Violations § 2923.6,

12   2924.10, and 2924.18.  (4) and violation of the UCL.

13

14   ### III. LEGAL STANDARD

15   A. **Fed. R. Civ. P. 12(b)(6)**

16     Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") provides that a party may move to

17   dismiss a complaint based on "failure to state a claim upon which relief can be granted."

18   A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the

19   claims alleged.[2]  If the plaintiff does not nudge his claims across the line from

20   conceivable to plausible, the plaintiff's complaint must be dismissed.  *Bell Atlantic*

21   *Corp. v. Twombly,* 540 U.S. 544, 570 (2007).  The Court does not require heightened fact

22   pleading of specifics, but only enough facts to state a claim to relief that is plausible on

23   its face.  *Id.*  A claim has facial plausibility when the plaintiff pleads factual content that

24   allows the court to draw the reasonable inference that the defendant is liable for the

---

2

*See Parks Sch. of Bus. v. Symington* 51 F.3d 1480, 1484 (9th Cir. 1995)

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    misconduct alleged.[3]

2        The Ninth Circuit stated in *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (2009),  that a

3    court must also take all allegations of material fact as true and construe them in the light

4    most favorable to the non-moving party, although "conclusory allegations of law and

5    unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  The

6    analysis for Rule 12(b)(6) is not whether a plaintiff will ultimately prevail, but whether

7    the claimant is entitled to offer evidence to support the claims advanced in his or her

8    complaint.[4]

9        A court granting a motion to dismiss a complaint must then decide whether or not

10   to grant leave to amend.  Fed. R. Civ. P. 15(a) ("Rule 15(a)") provides that plaintiffs may

11   amend its pleading once as a matter of course subject to certain restrictions.  Rule

12   15(a)(2) specifically provides that "…a party may amend its pleading only with the

13   opposing party's written consent or the court's leave.  The court should freely give leave

14   when justice so requires."[5]  "...the grant or denial of leave to amend is within the

15   discretion of the District Court, but outright refusal to grant the leave without any

16   justifying reason appearing for the denial is not an exercise of discretion; it is merely

17   abuse of that discretion and inconsistent with the spirit of the Federal Rules."  *Id.*

18       Furthermore, a Plaintiff may file an amended complaint adding additional causes

19   of action where "allowing such amendment will in no way impede the efficient

20   resolution of the issues already raised by the Plaintiff's prior cause of action, nor are

21   Defendants in any way prejudiced in their defense by the amendment."  *Graybeal v.*

---

3
        *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)
4
        *Diaz v. International Longshore and Warehouse Union, Local 13,* 474 F.3d 1202,
1205 (9th Cir. 2007)
5
        *See Foman v. Davis* 371 U.S. 178, 182 (1962)

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   *American Sav. & Loan Assoc.,* 59 F.R.D. 7, 21 (D.D.C. 1973).

2   **B. Judicial Notice**

3   "A court may take judicial notice of 'matters of public record' without converting

4   a motion to dismiss into a motion for summary judgment," as long as the facts noticed

5   are not "subject to reasonable dispute."[6]  Defendants requested the Court to take judicial

6   notice of several documents.  While Plaintiffs do not dispute that these documents exist,

7   the Court should not accept Defendants' *interpretation* of what each of the document

8   signify, including but not limited to the allegations that all the signatures in the

9   documents are genuine and valid, all the entities in the documents are legitimate and

10  true, and that the transfer of rights are legitimate and valid.

11                              **IV LEGAL ARGUMENT**

12  A. **Okada's claim for False Promise[7] and Negligent Misrepresentation**

13     **adequately alleges, misrepresentation, scienter, reliance, and damages.**

14       To state a claim for fraudulent misrepresentation – both intentional and negligent

15  – the plaintiff must allege: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to

16  defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage.[8]  Fed.

17  R. Civ. P. 9(b) ("Rule 9(b)") requires that these facts be alleged with particularity.[9]

---

6
     *Intri-Plex Techs., Inc. v. Crest Group Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007)

7
     The cause of action "False Promise" is derived from California Civil Jury
Instructions 1902.  Cal. Civ Code § 1710 outlines four kinds of "deceit" and the name
"False Promise" is derived from the 4th type of deceit which is a "promise without any
intention of performing it."  See CACI Instruction 1902.  It is a form of intentional
misrepresentation.

8
     *Lazar v. Superior Court*, 12 Cal. 4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981
(1996)

9
     *In re Glen Fed. Sec. Litig.*, 42 F.3d 1541, 1547-49 (9th Cir. 1994)

1   Negligent misrepresentation is a fraud-based claim and also requires pleading with

2   particularity.[10]  The elements of a negligent misrepresentation claim are the same as

3   those for a claim of fraudulent misrepresentation, except that there is no requirement of

4   an intent to induce reliance.  The misrepresentation must concern a past or existing fact.

5   *Id*.

6        Rule 9(b) states: "in alleging fraud or mistake, a party must state with particularity

7   the circumstances constituting fraud or mistake.  *Malice, intent, knowledge, and other*

8   *conditions of a person's mind may be alleged generally*"  (emphasis added).  Thus, the

9   Ninth Circuit has held that "while a federal court will examine state law to determine

10  whether the elements of fraud have been pled sufficiently to state a cause of action, the

11  Rule 9(b)requirement that the circumstances of the fraud must be stated with

12  particularity is a federally imposed rule."[11]  In other words, "averments of fraud must be

13  accompanied by 'the who, what, when, where, and how' of the misconduct charged."[12]

14  "The requirement of specificity in a fraud action against a corporation requires the

15  plaintiff to allege the names of the persons who made the allegedly fraudulent

16  representations, their authority to speak, to whom they spoke, what they said or wrote,

17  and when it was said or written."[13]

18  **1. Okada pleads a plethora of details which ground Okada's False Promise**

19  **and Negligent Misrepresentation claims.**

20        In BANA's motion to dismiss, BANA contends Plaintiff's complaint *does not*

---

10
   *Samson v. One West Bank*, U.S. Dist. LEXIS  at *3 (N.D. Cal. July 28, 2011)

11
   *Vessa v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)

12
   *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009)

13
   *Johnson v. Aurora Bank, F.S.B.*, 2015 U.S. Dist. LEXIS 36140 at 30. (N.D. Cal
Mar. 23, 2015)

1  *allege* "what misrepresentations were said, the individual's authority to make a

2  representation, or whether the misrepresentation was made with the *intent to defraud*."

3  (*See* BANA's Motion P. 6 lines 2-4).  Furthermore, BANA contends that Okada failed to

4  allege misrepresentations of reliance and damages.

5       But the face of the complaint *clearly spells out these circumstances*.  On March 7,

6  2013, Mr. Andres Orphanopolous, the attorney representing BANA, informed Okada

7  that BANA determined Okada qualified under the NMSP and Okada potentially

8  qualified for reduced principal on his loan.  Comp ¶ 22.   Further, Mr. Orphanopolous

9  assured Okada no foreclosure activity would take place provided Okada was under

10  consideration for the NMSP.  Compl. ¶ 22.  Okada relied on these representations and

11  dismissed his lawsuit.  Compl. ¶ 23. Okada received a letter from BANA falsely

12  accusing Okada of withdrawing his application on June 10, 2013.  Compl. ¶ 27.  As

13  instructed by BANA representatives, Okada submits numerous documents and whole

14  NMSP applications in order to insure review under the NMSP.  Comp.  ¶'s 25, 26, 33,

15  34, 39.  Finally, on July 30, 2013, Ms. McRae, BANA's representative, indicates to

16  Okada BANA's underwriters required a utility bill and that once received from Okada,

17  BANA would provide Okada a decision on the NMSP application in 2 weeks.  Compl. ¶

18  39  Okada did submit the document but the servicing was transferred from BANA to

19  SPS. Compl. ¶ 41  BANA's loan servicing transfer to SPS and SPS's subsequent delay in

20  reviewing Okada's NMSP application resulted in the expiration of the NMSP program

21  on January 1, 2015, additional costs, late servicing fees, and a failure to obtain possible

22  principal reduction on Okada's loan.  Comp ¶'s 61-63.  And finally, despite Okada's

23  submission of a complete application, National Default Servicing Corporation filed a

24  notice of default on February 27, 2015.  Compl. ¶ 56.

25       The complaint is replete with details, dates, names and representations made by

26  BANA representatives regarding Okada's NMSP application.  To characterize the

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    complaint as legal conclusions with no factual support is false.

2         While BANA contends the complaint does not specify knowledge of BANA's

3    state of mind, the law requires only a general allegation of BANA's intent.  BANA's

4    acceptance of Okada's application, BANA falsely accusing Okada of withdrawing the

5    application, and BANA's loan servicing transfer to SPS creates a strong inference

6    BANA intended to deny Okada an opportunity to modify his loan under the NMSP.

7         **2. BANA completely mischaracterizes Okada's complaint as one wholly**

8    **lacking in detail or reason.**

9         First, BANA does not understand why Okada "waited six months from

10    withdrawing the Complaint and submitting Okada's loan modification."[14]  The facts

11    behind the Complaint directly contradicts this assertion.  Okada dismissed his lawsuit on

12    March 25, 2013.  Compl. ¶ 23.  Okada submitted all his NMSP documents on March 23,

13    2013 and March 28, 2013  Compl. ¶ 25-26.

14         Second, BANA contends it never caused Okada to dismiss his case.  BANA

15    ignores Mr. Orphanoplous' representations that induced Okada to dismiss his case.

16    BANA states that Plaintiff's "legal relations changed due to Plaintiff's own conduct."[15]

17    But this assertion completely ignores Mr. Orphanopolous' and BANA's offers to review

18    Okada under the NMSP and that while Okada was being reviewed, Okada would not be

19    under threat of foreclosure.  Okada relied on these representations and abandoned his

20    lawsuit to pursue the offered NMSP modification.

21         Third, BANA contends that Okada submitted loan modifications to SPS after they

---

14

    *See* BANA's Motion to Dismiss P. 8 Lines 4-5

15

    *See* BANA's Motion to Dismiss P. 8 Lines 8-9

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  were service released to BANA.[16]  And this is where BANA's whole motion to dismiss
2  argument lies.  BANA grounds this contention by refusing to acknowledge Okada's
3  NMSP application submissions on March 23 and March 28.  Instead, BANA, *without*
4  *any basis*, informed Okada that he withdrew his application and delayed the process.
5  Compl. ¶ 31.  Okada submits another "complete application" on June 25, 2013.  Compl.
6  ¶ 33  But BANA requests additional documents from Plaintiff to "complete the
7  application" and further delayed the process.  Compl. ¶ 34.  At this point, Okada was
8  given a list of all documents needed to complete the application.  But BANA *requested*
9  *more documents* on July 9, 2013, and further delayed the process.  Compl. ¶ 35.  Okada
10  sent the requested documents.  Compl. ¶ 36.  On July 17, 2013, BANA requests more
11  documents and even further delays the process.  Compl. ¶ 37.  Again, Okada believes he
12  has provided them with all required documents.  Compl. ¶ 37.  Of course, BANA *again*
13  *requests more documents* and further delays the process on July 30, 2013. BANA
14  indicates that this document would be the last document to complete the application and
15  a decision on the application would be made in two week.  Compl. ¶ 38-39.  Okada
16  submits these documents.  Astoundingly, BANA service releases the loan to SPS further
17  delaying the process and obviating itself from the NMSP application.  Compl. ¶ 41.
18  Because BANA and SPS consistently delayed Okada's application, the NMSP expired
19  greatly damaging Okada's opportunity to receive hundreds of thousands of dollars in
20  reduced principal. Compl. ¶ 61-63.   Contrary to BANA's claim, Okada fully lays out
21  numerous factual details to support his intentional and negligent misrepresentation
22  claims.

23       **3. As a matter of law, BANA owed Okada a duty of care in processing his**
24  **loan modification application**.

---

16
        *See* BANA's Motion to Dismiss P. 8 Lines 11-13

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    While BANA is correct in asserting generally that lenders do not owe a duty of

2  care to borrowers, BANA fails to mention that this finding is not a hard and fast rule.

3  Several courts have concluded that financial institutions exceed their role as a money

4  lenders once it accepts an application for a loan modification and is thus subject to a

5  standard of reasonable care in handling the application.[17]

6    In California, the test for determining whether a financial institution exceeded its

7  role as money lender and thus owes a duty of care to a borrower-client involves "the

8  balancing of various factors, among which are: (1) the extent to which the transaction

9  was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree

10  of certainty that the plaintiff suffered injury, (4) the closeness of the connection between

11  the defendant's conduct and the injury suffered, (5) the moral blame attached to the

12  defendant's conduct, and (6) the policy of preventing future harm." *See Nymark v. Heart*

13  *Fed. Sav. & Loan Ass'n*,  231 Cal. App. 3d 1089, 1098 (1991).

14    In *Bowman v. Wells Fargo Home Mortg., 2014 Us.Dist Lexis 65806* 20-21 (N.D*

15  *Cal. May 13, 2014)*, the court found that Wells Fargo owed Plaintiff Bowman a duty of

16  care stating that "five of the six factors weigh in Plaintiff's favor."  The facts in *Bowman*

17  are almost identical to Okada in that the delays and misrepresentations caused by all

18  Defendants in the action contributed to Okada's lost opportunity to obtain a loan

19  modification – especially the NMSP where Okada possessed an opportunity to reduce

20  the principal on his loan by hundreds of thousands of dollars.

---

17

See *Garcia v. Ocwen Loan Serv., LLC*, 2010 U.S. Dist. LEXIS 45375 at *3 (N.D. Cal. May 10, 2010); *Trant v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 98404, at *6-7 (S.D. Cal. July 12, 2012);  *Ansanelli v. JPMorgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 32350 at *7 (N.D. Cal. Sep. 11, 2013); *Avila v. Wells Fargo Bank*, 2012 U.S. Dist. LEXIS 100522, at *12-*14 (N.D. Cal. July 19, 2012); *Chancellor v. OneWest Bank*, 2012 U.S. Dist. LEXIS 71992, *13-14 (N.D. Cal. May 22, 2012)

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    Thus, a weighing of the California duty of care factors warrants a finding that

2 BANA owed Okada a duty of care in reviewing Okada under the NMSP.

3    **4.  Okada's lost opportunity to obtain the NMSP satisfies the False Promise**

4 **and Negligent Misrepresentation damage requirement.**

5    BANA relies on *Stephenson v. Argonaut Ins. Co.* 125 Cal App. 4th 962, 974-975

6 (2004) to establish the proposition that  intentional and negligent misrepresentation

7 claims require a "**resultant hard dollar loss**."  But review of *Stephenson* reveals that it

8 does not stand for this proposition.  Indeed, *Stephenson's* holding leaves the door open

9 for damages other than "hard dollar losses." The *Stephenson* court writes, "**Whatever**

10 **form it takes**, the injury or damage must not only be distinctly alleged but its causal

11 connection with the reliance on the representation must be shown and the damage which

12 follows must be complained of with a legal certainty." *Id.* at 974-975.

13    Indeed, the court in *Bowman v. Wells Fargo Home Mortg*. At 20-21 held that

14 despite no guarantee of a modification being granted, losing the opportunity to obtain a

15 loan modification through a servicers mishandling of documents creates an injury to

16 homeowners that is legally certain.

17    The *Bowman* court also noted at 20-21:

18        "The potential harm to Plaintiff from mishandling the application

19        processing was also foreseeable: the loss of an opportunity to keep her

20        home was the inevitable outcome. Although there was no guarantee the

21        modification would be granted, Plaintiff alleges that the mishandling of the

22        documents deprived her of the possibility of obtaining the requested relief.

23        The injury to Plaintiff is certain, in that she lost the opportunity to modify

24        her loan. There is also a close connection between Wells Fargo's conduct

25        and any injury actually suffered, because, to the extent Plaintiff otherwise

26        qualified and would have been granted a modification, Wells Fargo's

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1    alleged conduct precluded the loan modification application from being

2    properly processed."

3    Like *Bowman*, Okada engaged in modification discussions with BANA.  BANA

4    led Okada to believe that they would review him for the NMSP and assured Okada that

5    they would not engage in foreclosure proceedings provided that Okada was in

6    modification discussions.  BANA sent Okada conflicting accounts of the status of

7    Okada's application – even remarking falsely that Okada withdrew his NMSP

8    application.  See Compl. ¶ 31-32.  In fact, Okada's damages are more certain than the

9    facts in *Bowman* because the delay in processing Okada's NMSP application allowed the

10   NMSP to expire without review.   See Compl. ¶ 55  Okada can no longer obtain an

11   NMSP modification and principal reduction on his loan.

12   **B.  Okada's complaint adequately alleges violations of California Civil Code**

13   **Sections 2923.6, 2924.10, and 2924.18.**

14   Okada adequately alleges submission of a "complete application" throughout his

15   complaint, but essentially BANA asserts that it never received a complete application

16   and was not being reviewed for a modification, well….. because BANA said so.

17   BANA's self-serving definition of a "complete application" taken on its face would

18   render the protection of the Homeowners' Bill of Rights toothless.  Okada concedes the

19   need to update records and clarify questions once a "complete application" is provided.

20   But to insinuate Okada waited "nearly one year prior to any purported modification

21   application" is completely misleading.[18]

22   BANA quickly point out the "inconsistencies" in Plaintiff's complaint, but the

23   "inconsistencies" reflect BANA's representations to Plaintiff.  BANA's claim that Okada

24   never submitted a "complete application" is at best a question of fact not law.  BANA's

_____

18

*See* p. 11 of BANA's Motion to Dismiss lines 26-27

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   definition of a "complete application" would renders Civil Code § 2923.6 toothless.

2   Finally, when BANA assures Okada that one more document completes the application,

3   *BANA service releases his loan to SPS*.  BANA now contends that it obviated itself from

4   Homeowner's Bill of Right scrutiny.  At worst, a question of fact remains as to whether

5   BANA forwarded the NMSP application to SPS.

6       Since its offer to review Okada under the NMSP, BANA consistently

7   misrepresented the state of Okada's NMSP application and denied Okada a meaningful

8   opportunity to obtain a loan modification.  BANA's sudden servicing transfer **bolsters**

9   **the argument that BANA never intended to review Okada under the NMSP.**

10      Furthermore, BANA's service releasing the NMSP application violates Ca. Civ.

11  Code 2923.7's requirement that BANA provide a single point of contact responsible for

12  "communicating, coordinating, providing access to all current information and ensuring

13  that Okada is considered for a modification."  See Ca. Civ. Code §2923.7.  Okada

14  requests  leave to amend the complaint and add violation of Ca. Civ. Code § 2923.7

15  against BANA.

16      **C. Plaintiff adequately alleges an actionable claim for violation of the UCL**

17  **against BANA.**

18      Plaintiffs' seventh claim is for unfair competition in violation of California's UCL,

19  Cal. Bus. & Prof. Code § 17200.  The UCL prohibits any "unlawful, unfair or fraudulent

20  business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Since section 17200 is

21  written in the disjunctive, it establishes three separate types of unfair competition.  The

22  statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'"[19]  To

23  support a claim for a violation of the UCL, a plaintiff cannot simply rely on general

24  common law principles.[20]

---

19

    *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (Ca. 4th 2003)

20

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1        The UCL incorporates other laws and treats violations of those laws as unlawful

2    business practices independently actionable under state law.[21]  Violation of almost any

3    federal, state or local law may serve as the basis for a UCL claim.[22]   In addition, a

4    business practice may be "unfair or fraudulent in violation of the UCL even if the

5    practice does not violate any law."[23]

6        **1. Okada's complaint adequately alleges injury to satisfy the UCL's standing**

7    **requirement.**

8        Courts have held that the sorts of wrongs that Okada alleges constitute "economic

9    injury" sufficient to yield a viable UCL claim.  The California Supreme Court in *Kwikset*

10   *Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011), defined the "Economic Injury"

11   prong in establishing standing under the UCL:

12        "there are innumerable ways in which economic injury from unfair competition

13        may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a

14        transaction less, than he or she would otherwise have; (2) have a present or future

15        property interest diminished; (3) be deprived of money or property to which he or

16        she would otherwise have or (4) be required to enter into a transaction costing

17        money or property that would otherwise be unnecessary."

18        The court in *Segura v. Wells Fargo Bank*, relying on *Kwikset* held that a plaintiff

19   had "plainly" suffered economic injury, and thus had an actionable UCL claim, from a

---

21       *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072, (Ca. 4th 2004)

22       *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)

23       *Saunders v. Superior Court*, 27 Cal. App. 4Th 832, 838-39, 33 Cal. Rptr. 2d 438 (Cal. App. 1994)

       *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827, 135 Cal. Rptr. 2d 1, 69 P.3d 927 (Cal. 2003)

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  lost opportunity to obtain "lower monthly mortgage payments" through a loan

2  modification.  2014 U.S. Dist. LEXIS 143038, 2014 WL 4798890 at *9.  The *Segura*

3  court even held that "miscalculating Plaintiffs' eligibility for loan modification

4  programs" would alone suffice to state a UCL claim.  2014 U.S. Dist. LEXIS 143038, at

5  *9.  "No more is needed to state a claim," the Honorable Michael W. Fitzgerald wrote

6  for the court.  *Id.*

7       The numerous detailed facts presented by Okada adequately provide a detailed

8  picture of BANA's representations and misrepresentations which led to Okada's lost

9  opportunity to avail of the NMSP modification.  The lost opportunity to obtain principal

10  reduction under the NMSP due to BANA's delays and loan servicing transfer to SPS

11  without providing SPS the NMSP application constitutes "economic injury" which

12  satisfy the UCL's standing requirements.

13       **2.  Okada establishes standing under the UCL by adequately pleading**

14  **"actionable conduct."**

15       "To state a cause of action based on an unlawful business act or practice under the

16  UCL, a plaintiff must allege facts sufficient to show a violation of some underlying

17  law."[24]  In addition, a plaintiff may also establish standing where the alleged business

18  practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to

19  consumers and requires the court to weigh the utility of the defendant's conduct against

20  the gravity of the harm to the alleged victim."  *Id.*

21       Okada's complaint adequately alleges BANA violates several provision of the

22  Homeowner's Bill of Rights.  Okada, with sufficient detail, adequately pleads that all

23  defendants violated Civil Code §§ 2923.6, 2924.10, 2924.18.  Furthermore, Okada

---

24
       *Cruz v. Aurora Loan Servs., LLC* 2015 U.S. Dist. Lexis 58891, *28 (N.D. Cal.
May 5, 2015)

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  alleges that both BANA and SPS' delay in reviewing Okada under the NMSP

2  subsequently led to the expiration of the NMSP.  Because the NMSP expired, Okada lost

3  a valuable opportunity to obtain principal reduction on his home.  Thus, Okada's

4  complaint establishes standing to sue under the UCL because Okada satisfies the UCL's

5  "actionable conduct" requirement.[25]

6  **CONCLUSION**

7       Okada has alleged sufficient facts to support his claims against Defendants.   For

8  the reasons set forth above, Plaintiff hereby respectfully requests that the Court deny

9  Defendants' Motion to Dismiss, or if the Court grants BANA's Motion to Dismiss,

10  permit Okada with leave to amend.

16  Dated: July 12, 2015                 MANASAN LAW GROUP, PC,

18                             s/RSM

19                      _____

20                      Rowel S. Manasan, Esq.

21                      Attorney for Plaintiff Okada

---

25

     *Id.* at 24-25

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**